Alfred Prignano, Plaintiff, Elaine Prignano and Mary Prignano and Carolyn Prignano, Minors, by Elaine Prignano, Their Mother and Next Friend, Plaintiffs-Appellees, v. Jack Mastro, Defendant-Appellant, and Nick T. Mastro, Defendant.
William Joicey and Reginald Main, Plaintiffs-Appellees, v. Alfred Prignano, Defendant, Jack Mastro, Defendant-Appellant, and Henry Parrilli, Defendant.

Gen. No. 49,896.

First District, Fourth Division.

July 7, 1965.

Querrey, Harrow, Gulanick & Kennedy, of Chicago (John T. Kennedy, of counsel), for Jack Mastro, defendant-appellant.

Meyer S. Miller, of Chicago, for Elaine Prignano and Mary Prignano and Carolyn Prignano, minors, by Elaine Prignano, plaintiffs-appellees; Miller, Green & Frazin, of Chicago, for William Joicey and Reginald Main, plaintiffs-appellees; Hubbard, Hubbard, O'Brien & Hall, of Chicago, for Alfred Prignano, defendant-appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Suit was brought by Alfred Prignano, Elaine Prignano, and Mary and Carolyn Prignano, minors, by Elaine Prignano, their mother and next friend, as plaintiffs, against Jack Mastro and Nick T. Mastro, as defendants. A second suit was brought by William Joicey and Reginald Main, plaintiffs, against Alfred Prignano and Jack Mastro as defendants. The cases were consolidated for trial. The first suit was a trial before the court without a jury. The court made a finding in favor of the plaintiffs, Elaine, Mary and Carolyn Prignano, against defendant, Jack Mastro, finding that Carolyn had sustained damages in the sum of $350, Mary in the sum of $1,000, and Elaine in the sum of $2,100.

The second suit was a jury trial. The jury returned a verdict in favor of the plaintiffs, Joicey and Main, and against the defendants, Alfred Prignano and Jack Mastro, awarding damages of $27,500 for plaintiff Joicey and $750 for plaintiff Main. Judgment was entered on that verdict.

Jack Mastro filed a post-trial motion in the consolidated cases, which motion was denied. From the judgments entered against him Jack Mastro takes this appeal.

The actions arose out of a three-car accident which occurred about 2:30 p. m., on July 4, 1957 (a warm, sunny day), at the intersection of 25th Avenue, a north-and-south street, and St. Charles Road, an east-and-west street, in Bellwood, Cook County, Illinois. The intersection was controlled by traffic signal lights. Defendant Jack Mastro, driving east, collided with defendant Alfred Prignano, driving south, who then struck the vehicle of Joicey which was standing, facing north. Joicey was in the driver's seat and Main was seated next to him. In the car driven by Alfred Prignano, his wife, Elaine, and his daughters, Mary and Carolyn, were passengers. Alfred Prignano took no appeal from the judgments entered in the trial court. He filed a brief in this court which was stricken.

The theory of the defendant, Jack Mastro, is that the verdict of the jury against him was against the manifest weight of the evidence and that the sole negligence was that of his codefendant, Alfred Prignano; that the court erred in giving an instruction and in refusing to allow certain evidence to be introduced and in refusing to hold that the negligence of Prignano barred any claim by his minor children for medical expenses.

The evidence is in sharp conflict. Joicey testified that he was going north in 25th Avenue and stopped for the traffic light which had been red for three or four seconds before he reached the intersection; that his car was in the inner lane as he intended making a left turn when the light changed; that he saw Mastro's car coming east on St. Charles Road in the outer lane closest to the curb; that there was a car in the eastbound inner lane (Sliwinski's car) already stopped at the intersection when Mastro was two to three car lengths away from the intersection of 25th Avenue. He stated that Prignano's car was on 25th Avenue, going south, and that Prignano went through the red

69

light, traveling at a speed of 45 miles an hour; that Mastro's car, traveling east, hit Prignano's car and threw it over onto Joicey's car. He further stated that after Mastro's car hit Prignano's car, the latter car would have tipped over if Joicey's car had not been there to stop it. He stated that he saw the Mastro car coming eastbound in the curb lane for only a fraction of a second, or a couple of seconds, about 20 to 36 feet back of the place where the collision occurred, and that the Mastro car was traveling at 35 to 40 miles an hour.

Alfred Prignano testified that he was traveling south on 25th Avenue; that as he approached St. Charles Road the traffic signal for him was green; he was traveling at 20 to 25 miles an hour and he kept going. He stated that he saw one car standing still, facing east next to the center line (the Sliwinski car); that he did not see any other traffic either stopped or moving eastbound in St. Charles Road when he looked from 30 to 50 feet before he reached the intersection. He further testified that before he came in line with the stopped car he saw the Mastro car coming east on St. Charles Road; that he was about three-quarters of the way through the intersection when Mastro struck him. He stated that Mastro came around the side of the Sliwinski car and that he, Prignano, was right in front of the Sliwinski car when he first saw Mastro. Prignano further said that when he entered the intersection he was in the lane next to the center line; that the Mastro car struck the center of the Prignano car on the right side between the two doors; Prignano's car was thrown sideways and struck the Joicey car. Prignano indicated confusion as to the corners on which the traffic lights were situated and as to which light he was observing.

Elaine Prignano testified that as the Prignano car approached St. Charles Road she saw a traffic light

70

on the southwest corner when they were about 100 to 150 feet from the intersection; that the light for the southbound traffic was green, and was still green when they were 30 to 50 feet away and when they were entering the intersection. She stated that she then saw an eastbound car stopped, waiting for the light (Sliwinski's car); that as the Prignano car entered the intersection, approaching the stopped eastbound car, there was another oncoming eastbound car (Mastro's) which went around the Sliwinski car and struck their car.

It is admitted that the speed limit for both streets was 25 miles an hour.

Reginald Main, one of the plaintiffs, who was a passenger in the Joicey car, testified that at the time of the accident the Joicey car was stopped at the intersection for a red light which had been red for three or four seconds; that he did not see either the Prignano car or the Mastro car before the collision.

Peter Sliwinski testified that at the place and time in question he was driving his car east on St. Charles Road; that he had stopped for an amber light which immediately turned to red; that he was in the lane next to the center line; that no cars were behind him or in the other traffic lane; that when the light turned green he started to move but saw a car coming from the north which made no attempt to stop, so he stopped his car. He stated that he did not see how fast the Prignano car was going and that the first time he saw it the front of the Prignano car was south of the north curb; he saw the Mastro car pass him.

Jack Mastro testified that he was traveling east on St. Charles Road; that when he was 100 to 200 feet back of the lights he stopped his car because he had a red light facing him; he saw the Sliwinski car to his left and it did not block his vision; that when the light changed to green he started his car. He stated

71

that the Sliwinski car also started, but stopped abruptly, and that when he looked up he saw the Prignano car coming, which car he struck. He further testified that he did not know the speed at which the Prignano car was traveling, but that the traffic light for the Prignano car was red; that at the time he stopped he was 8 to 10 feet back of the light and when it turned to green he proceeded through the 8 to 10 feet to the intersection. He stated that when he first saw the Prignano car it was in the intersection; that after the impact the Prignano car hit the Joicey car; that the front end of the Prignano car was down and the other side went straight up in the air, flipping over onto the Joicey car.

Mastro here argues that the manifest weight of the evidence established that he was not guilty of negligence but that the sole negligence was that of Prignano. In support of that argument he stated that the photographs of his car and Prignano's introduced in evidence establish that he could not have been driving at 35 miles an hour when the collision occurred because his car sustained relatively little damage. Under the circumstances of this case we do not give much weight to this argument as we consider the photographs and the extent of damage to the striking car to have only slight probative value.

In this case there was a question presented for the jury to determine whether or not the Prignano car had entered the intersection on a green light which then changed to red; whether or not the Mastro car had, on a green light, entered the intersection at the rate of 35 miles an hour; and whether or not Mastro, assuming he had entered the intersection on a green light, had any duty to determine if he could go through the intersection without a resulting collision.

In Pfister v. West, 53 Ill App2d 305, 203 NE2d 35, an accident occurred at an intersection controlled by

traffic signals. The plaintiff entered the intersection on a green light, proceeding through, and was hit by the defendant's car which he had not seen at any time before the collision. The jury returned a verdict in favor of the plaintiff and the trial judge sustained defendant's motion for a judgment notwithstanding the verdict. The case was reversed, the Appellate Court holding that the plaintiff was not guilty of contributory negligence as a matter of law. Since it does not appear from the record in that case that the facts were not in dispute, the court said, at page 312:

> "Control lights are installed to give a preferential right of way to motorists having the green light. [Citing cases.] A motorist cannot be expected, as a matter of law, to adjust his conduct to deal with disregard of the traffic laws, and persons having the green light may assume that intersection traffic will stop until the light in their favor turns green. Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569, 69 NE2d 293.

> "These presumptions in favor of the preferred motorist, however, do not excuse him from acting with reasonable care, in light of all the circumstances, and he cannot blindly rely on traffic signals where he should have apprehended that his conduct will probably result in an accident (Dodds v. Chicago Transit Authority, 9 Ill App2d 388, 132 NE2d 816 (1956)). They do, however, establish that whether he exercised such care in the manner with which he entered or passed through the intersection, is a question to be determined by the trier of the facts."

■ Where the driver of a car at a control signal has a green light in his favor there still rests upon him a duty to drive as a prudent person would to avoid a collision when danger is discovered or, by

73

the exercise of reasonable care, should have been discovered. The jury could have found that Mastro was negligent in entering the intersection as he did. Conner v. McGrew, 32 Ill App2d 214, 177 NE2d 417.

In Read v. Cummings, 324 Ill App 607, 59 NE2d 325, the court laid down the rule concerning the duty of the trial judge when a motion is made after verdict for a new trial on the ground that the verdict is against the weight of the evidence. The court stated:

"... It is then the duty of the trial judge to consider the weight of the evidence and if he is of opinion that plaintiff has not proven his case by a preponderance of the evidence, taking into consideration the fact that the jury has found otherwise, it is his duty to set aside the verdict and grant a new trial. And if the court does not do so but overrules the motion and enters judgment and the case is then brought to this court, we are not authorized to disturb the verdict on this ground unless the verdict and judgment are against the manifest weight of the evidence. ..."

And in Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 180 NE2d 347, the court said:

"A court of review in passing on the question of whether the verdict is against the manifest weight of the evidence must take into consideration not only the verdict of the jury but the fact that the trial judge also saw and heard the witnesses, heard arguments of counsel, and then denied the motion for new trial. Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635. In order for the court to determine that the verdict is against the manifest weight of the evidence an opposite conclusion must be clearly

74

evident or the jury's verdict palpably erroneous and wholly unwarranted from the manifest weight of the evidence. Benkowsky v. Chicago Transit Authority, 28 Ill App2d 257, 171 NE2d 416. A verdict will not be set aside merely because the jury could have found differently or because judges feel that other conclusions would be more reasonable. Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836. In Devine v. Delano, 272 Ill 166, 180, 111 NE 742, 748, the court says:

" 'A greater or less probability, leading, on the whole, to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts. (1 Greenleaf on Evidence,—16th Ed—sec 1; Commonwealth v. Webster, 5 Cush 295; 11 Am & Eng Ency of Law,—2d Ed—490.)' "

■■ Questions of negligence are ordinarily questions of fact for a jury to decide, and questions on which reasonable men could arrive at different results should never be determined as a matter of law. Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74.

■■ In the instant case, it cannot be said that on the evidence presented an opposite conclusion would be clearly evident or that reasonable men could not disagree. We hold that the jury verdict against Mastro was not against the manifest weight of the evidence. A stipulation had been entered into between the parties regarding the mode of trial of the two cases since the Joicey-Main case was a jury case and the Prignanos, plaintiffs, case was a nonjury matter. In that stipulation it was agreed that "in the trial before the jury of Joicey, et al., v. Prignano, no mention be made of any injuries to any of the Prignano family." In a conference between counsel and the court, out of the presence of the jury, counsel for the defendants requested the court to rule that Elaine Prignano could

be asked whether or not she is the plaintiff in another accident case for injuries which she therein received. Objection was made on the ground that it was stipulated that "no reference would be made to that other case." The court denied the request and an offer of proof was made that the following question be asked: "Mrs. Prignano, are you a plaintiff in an action which is presently pending for the injuries which you received as a result of this accident for which you have just given testimony? And her answer would be, 'Yes.'" No citation of authority is needed to show that the question sought to be asked was prohibited by the spirit of the stipulation. When parties enter into a stipulation such as was entered into in this case they are bound by it. People v. Lehman, 5 Ill2d 337, 125 NE2d 506.

It is also argued that the court erred in refusing to permit counsel for Mastro to ask leading questions in examining plaintiff Joicey. An examination of the abstract does not support the argument made in the brief. While there was a disagreement as to the form of questioning, nevertheless all questions asked by counsel for Mastro were answered by Joicey, and there was no ruling of the court that leading questions could not be asked.

It is also argued that the court erred in giving an instruction to the jury which set out the plaintiffs' theory of the case based on their pleadings. The conference on instructions held before the court, out of the presence of the jury, does not clearly indicate that an objection was made by Mastro's counsel to this instruction on the specific grounds now urged before this court.

In his post-trial motion Mastro stated:

"6. The court erred in receiving evidence as to the medical expenses of the plaintiffs, Mary Prignano and Carolyn Prignano, minors, since

76

those medical expenses were charges against only Alfred Prignano, their father, and he was prevented from recovery by his negligence."

Mastro argues in this court that the claims for the medical expenses of the Prignano minors were improperly allowed by the court in the trial of the case without a jury. The bills for the hospital expenses of Mary Prignano were received in evidence without objection. It appears from the record that there was a considerable amount of physical harm inflicted on both Mary and Carolyn Prignano. This is borne out by the testimony of Elaine Prignano and two doctors who detailed the injuries suffered. There is also testimony in the record from the doctors that based on a reasonable degree of medical certainty the injuries could have been the result of the accident in question. The finding of the court was that the plaintiff, Carolyn Prignano, sustained damages in the sum of $1,000. With reference to the doctors' bills, Dr. Page testified over objection that a fair and reasonable charge for the services rendered Mary Prignano would be $25; and Dr. Vertuno testified over objection that his fee was $146 for Mary and $72 for Carolyn. The total doctors' charges were $171 for Mary and $72 for Carolyn.

The case of Mary and Carolyn was heard by the court without a jury. It is presumed in such a case that only competent evidence was considered by the court in assessing the damages and an error in admitting evidence does not require reversal when there is other evidence adequate to support the judgment. Purcell v. Weasel, 12 Ill2d 356, 146 NE2d 580; Maton Bros. v. Central Illinois Public Service Co., 356 Ill 584, 191 NE 321; Weinebrod v. Rohdenburg, 343 Ill 318, 175 NE 379. Disregarding the doctors' bills entirely, the evidence in the record was amply sufficient to sustain the court's findings with reference

77

to Carolyn and Mary, and the court's judgment based on its findings was proper.

The judgments of the Circuit Court of Cook County are affirmed.

Affirmed.

ENGLISH and DRUCKER, JJ., concur.