ARLENE THOMAS, Plaintiff-Appellee, *v.* YELLOW CAB COMPANY *et al.*,
Defendants-Appellants.

First District (1st Division) No. 61278

Opinion filed March 15, 1976.

Michael Silverman, of Chicago, for appellant.

Burke & Burke, Ltd., and John M. Newell, both of Chicago (John M. Burke, of counsel), for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

Plaintiff, Arlene Thomas, brought this suit to recover damages for personal injuries sustained as a result of the alleged negligence of the Yellow Cab Company, its driver, Sidney James (Yellow), and the driver of a second automobile, Elaine Sims (Sims). At the close of plaintiff's case, the court granted a directed verdict in favor of Yellow. Defendant, Elaine Sims, also made a motion for a directed verdict at this time; the

motion was denied. Elaine Sims then rested without putting on any evidence and the court directed a verdict in favor of plaintiff. The only issue then remaining was the amount of damages to be awarded and the jury returned a verdict against the defendant Sims in the sum of $4500. Defendant, Elaine Sims, appeals from the denial of her motion for a directed verdict and from the granting of the directed verdict in favor of plaintiff. Plaintiff has not appealed the granting of the directed verdict in favor of Yellow.

Plaintiff was the only witness called to testify to the facts. On May 18, 1971, a dry and clear day, plaintiff was picked up at 3:30 or 4 in the afternoon at her place of employment by a Yellow Cab driver, Sidney James. She told the driver her destination and he traveled north on Racine Avenue to reach it. Upon reaching the intersection of 87th Street and Racine Avenue, the cab stopped for a red light. When it proceeded into the intersection, there was a collision with an eastbound auto driven by defendant, Elaine Sims. Mrs. Thomas was thrown against the front seat of the cab and injured.

Plaintiff's testimony bearing on which defendants' negligence caused the accident follows:

"Direct Examination

Q. When the cab came up to 87th Street did he continue moving or did he stop?

A. He stopped.

\* \* \*

Q. Can you tell me what happened then? Did he remain stopped, the cab driver?

A. Did he remain stopped?

Q. Yes, ma'am.

A. Well, he pulled off after a while, yes.

Q. And when he pulled off, did he pull into the intersection of 87th and Racine?

A. Yes, he did.

Q. And what, if anything, happened when the cab went into the intersection?

A. When the cab went into the intersection there was an impact.

\* \* \*

Q. Now, did you see the other vehicle that came into contact with the cab at any time before the accident?

A. Momentarily I did.

Q. All right. Were you able to form any estimate as to the speed of the other car?

A. No.

Cross-Examination by Counsel for the Yellow Cab Company

Q. * * * Now, when your cab came up to 87th Street, it stopped for a red light did it not?

A. It did.

* * *

Q. When it stopped for a red light, it continued to stand for a minute before it started up again, did it not?

A. I don't know how long it was.

Q. * * * Mrs. Thomas you gave your deposition, your discovery deposition in this case in June of 1972?

A. Yes.

* * *

Q. Now was this question asked of you and did you make this answer?

* * *

Q. About how long were you stopped?

A. I don't know—a minute or something, I don't know.'

* * *

Q. That was your answer, was it not?

A. Yes, it was.

* * *

Q. You did see that car going east before it struck you, did you not?

A. Yes, I did.

* * *

Q. And what part of the Sims car came into contact with what part of your cab?

A. I don't know.

Cross-Examination by Counsel for Elaine Sims

Q. Did you observe those traffic lights again before the taxicab started up from the red light?

A. Yes, I did.

Q. What color was it the last time you saw that traffic light but before the accident happened?

A. The last time I saw the light, it was yellow.

* * *

Q. Now, where was the front end of Mrs. Sims' car when you first observed it?

A. I don't know. Where was it? I don't know.

Q. Could you tell us whether or not when you first saw it,

whether it was already in the intersection or whether it was still west of. Racine Avenue?

A. It wasn't in the intersection when I saw it, no.

Recross-Examination by Counsel for the Yellow Cab Company

Q. * * * Mrs. Thomas you said that when you first saw the Sims' automobile, it was not yet in the intersection, right?

A. Right.

* * *

Q. At that time your cab was already moving, wasn't it, after it had stopped?

A. No, it wasn't."

■■ The question is whether the above testimony is sufficient evidence upon which to grant a directed verdict when that evidence is tested by the rule of *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513, 514:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Defendant Sims argues that it was error to deny her motion for a directed verdict at the close of plaintiff's case. She bases this argument first on the ground that no evidence of her negligence was produced. Taking into consideration the innocent position of plaintiff in this case and following the *Pedrick* standard, we do not agree that defendant Sims was entitled to a directed verdict. While plaintiff admits that the evidence did not overwhelmingly show that Sims was negligent, we judge that neither did the evidence so overwhelmingly favor the movant, Sims, that no contrary verdict against her could stand. In view of the brevity and ambiguity of plaintiff's testimony, reasonable minds could differ as to the liability of defendant Sims.

Defendant's second ground is that her motion should have been granted because the same motion by Yellow was granted. Her argument is that if the cab company, which is held to the standard of the highest degree of care, was dismissed from the case, then logic dictates that no liability could be found against her because she is held only to the standard of ordinary care. While defendant Sims is correct that Yellow owed plaintiff the highest degree of care consistent with the mode of conveyance and its practical operation (*Holderness v. Checker Taxi Co.*, 105 Ill. App. 2d 251, 245 N.E.2d 32), not every injury to a passenger being transported by a public carrier is attributable solely to the negligence of the carrier. (*Nilsson v. Checker Taxi Co.*, 4 Ill. App. 3d 718,

281 N.E.2d 721; *Kirkwood v. Checker Taxi Co.*, 12 Ill. App. 3d 129, 298 N.E.2d 233.) Defendant's argument ignores the fact that here, as well as in many other cases, the injury to a passenger may have been caused by something wholly beyond the control of the carrier. The denial of defendant's motion for a directed verdict in her favor was correct.

Defendant next argues that the direction of the verdict in favor of Yellow at the close of plaintiff's case made the presentation of any evidence on her behalf an exercise in futility and thus prejudiced her because the court had, in effect, decided that she and not Yellow was at fault. Because plaintiff has failed to appeal the directed verdict in Yellow's favor, the propriety of that decision is not before us. Plaintiff does argue, however, that on the evidence the directed verdict for Yellow was correct because she failed to make out a *prima facie* case against it, that defendant Sims had every opportunity to present her version, and that if the jury believed that she was not negligent she could have prevailed and that she did not because she failed to present any evidence. Because of the view we take of defendant's final contention, we judge that it was unnecessary for her to have presented any evidence in order to have the jury consider this case.

■■ Defendant's final contention is that the court erred in directing a verdict in favor of plaintiff and against her. Plaintiff testified that the cab did stop and wait for the red light. However, the critical question of when each vehicle entered the intersection was not answered. The only testimony touching on this question was when counsel for defendant Sims asked, "Did you observe those traffic lights again *before the taxicab started up from the* red light?" However, after the witness answered "Yes" the question was changed to "What color was it the last time you saw that traffic light *but before the accident happened?*", to which plaintiff answered "Yellow." Thus, a fact question still remained as to whether the cab was in the intersection on the yellow or green light. It was the province of the jury and not of the court to decide that question. The jury could have concluded that the cab jumped the red light; that even though defendant Sims had violated the red light, her act was not the proximate cause of the plaintiff's injury (*Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74); or that even though the cab entered the intersection on the green light, it should not have. A green light does not give a driver an absolute right to enter an intersection without maintaining a proper lookout (*Prignano v. Mastro*, 61 Ill. App. 2d 65, 209 N.E.2d 12) and does not prevent a finding of negligence against the driver. (Compare *Kallas v. Lee*, 22 Ill. App. 3d 496, 317 N.E.2d 704.) This is especially true of a public carrier, which owes its passengers the highest degree of care consistent with the mode of

conveyance and its practical operation. *Homka v. Chicago Transit Authority*, 2 Ill. App. 3d 334, 276 N.E.2d 351; *Dodds v. Chicago Transit Authority*, 9 Ill. App. 2d 388, 132 N.E.2d 816 (abstract opinion).

Plaintiff argues, however, that the direction of the verdict in her favor was correct because it was the duty of the court to do so since defendant failed to present any evidence. This position overlooks the ambiguity left at the end of plaintiff's own case, especially in light of the fact that there were two defendants involved (Yellow and Sims), either or both of which could conceivably have been liable for plaintiff's injuries. The presentation of evidence by defendant Sims was unnecessary to raise a fact question already existing in the case when plaintiff rested.

The granting of plaintiff's motion for a directed verdict in her favor was error in that the question of her liability was not so settled that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.) The failure of defendant Sims to present any evidence did not necessitate a directed verdict in favor of plaintiff when a fact question, properly resolvable by the jury, remained at the close of plaintiff's case. The denial of a directed verdict in favor of defendant Sims was proper; the granting of a directed verdict in favor of plaintiff was error. The judgment in favor of plaintiff is reversed and the cause remanded for a new trial as to the defendant Sims.

Judgment reversed and cause remanded for a new trial as to defendant Sims.

GOLDBERG, P. J., and SIMON, J., concur.