ANNA M. BARBOUR, Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellants.

First District (5th Division) No. 61599

Opinion filed August 27, 1976.

Sal M. Bianchi, John J. O'Toole, and Michael A. Gerrard, all of Chicago, for appellants.

Parillo, Bresler, Weiss & Moss, of Chicago (John D. Moss, of counsel), for appellee.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, judgment was entered in favor of plaintiff awarding her $16,000 damages for injuries she suffered after being struck by a bus owned by defendant Chicago Transit Authority (C.T.A.) and operated by its employee, defendant Curtis L. Curry. Defendants appeal

contending the trial court erred when it refused to grant their motion for a directed verdict and for judgment *n.o.v.*

The evidence pertinent to this appeal adduced at trial is as follows:

*For plaintiff*
*Anna Barbour on her own behalf*

She is 5'4" tall, weighs 135 pounds and at the time of the accident was 64 years of age.

She stood on the northwest corner of 63rd and Halsted Streets waiting to cross 63rd Street to board an eastbound bus which was stopped at Halsted. After checking the traffic control light on the southeast corner she started across. The light was green for Halsted Street traffic. Although the light on the southwest corner was obscured by the standing bus, proceeding across the street she saw the light on the southeast corner was still green. As she stepped in front of the standing bus she noticed the light had changed to amber. She attempted to hurry across and she yelled "wait." The bus made a "crunching" sound and moved a little. She turned to her left (east) and started to run. After two or three steps, the bus hit her in the back. She was pushed forward and the bus drove over her. She was knocked unconscious. When she regained consciousness she was underneath the bus. She estimated she was dragged 18 to 20 feet before the bus stopped. She was taken to the hospital where she remained under treatment for 2½ weeks.

*Frank Davis*

He was seated on the bus in question next to the window near the left rear wheel. The traffic light on the northeast corner of 63rd and Halsted was visible to him. When the light changed from red to green, the driver pulled away from the curb at 10 to 12 miles per hour. The only time lapse was "the time it takes to press an accelerator." People began to holler and the bus stopped when its front end reached the east side of Halsted. He looked out the window and saw plaintiff lying below him under the bus. No more than her neck and shoulders were showing. He did not see plaintiff before the accident.

*Curtis L. Curry, defendant under section 60*

He is a bus driver for the C.T.A. On August 22, 1970, at about 1:50 P.M. he was driving his bus eastbound on 63rd Street approaching Halsted Street. When he pulled to the curb the light was red. After several people boarded the bus, he waited for the light to change to green. To observe the lights on the south corners of the intersection he had to look to his right. He saw the light on the southwest corner change to green. Before

proceeding, he checked the light on the southeast corner and looked all around to make sure the intersection was clear, however, he did not see plaintiff. When his front bumper reached the center of Halsted Street he heard shouting. He immediately stopped the bus, although he had no idea what had happened. Walking around to the left side of the bus he found plaintiff lying on her right side with her head under the bus and her feet sticking out.

On cross-examination, he did not remember saying during his deposition on October 13, 1971, that he "didn't cross Halsted because she [plaintiff] fell."

### I. R. Strizaks

He is the attorney who took defendant Curtis L. Curry's deposition. At the deposition defendant twice said he "didn't cross Halsted because she [plaintiff] fell."

### Carl Hutchinson, Jr., M.D.

He is the orthopedic surgeon who treated plaintiff after the accident. X-rays of plaintiff's shoulder revealed an anterior dislocation of the shoulder, which was reduced. She had multiple abrasions and contusions and swelling of the right side of her head. She also had pain in her lower back on the right side, compatible with a contusion of the kidney and a fracture of the left foot. Both the dislocated shoulder and the fractured foot could have resulted from being struck by a bus.

### For defendant

### Curtis L. Curry on his own behalf

In addition to repeating the testimony on direct examination which he gave previously when called under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60) he said on cross-examination that he did not pull away just as the light turned green, but looked all around first. However, he admitted, "it doesn't take a second to look around to see if anybody is in front of the bus."

### George Lahori

He was employed as a C.T.A. collector at 63rd and Halsted Streets on the day in question. He does not recall the color of the light when the bus stopped, however, the light was green when the bus pulled away. People began yelling and a couple of seconds later the bus came to a halt. Looking around, he found a woman lying on the ground partially under the bus.

On cross-examination, he said he could not see the lights controlling north-south traffic. He admitted that in an earlier statement given to the C.T.A. he said plaintiff was "under the bus," "not partially under the bus."

*Ronald Pool*

He is a traffic engineer for the Bureau of Street Traffic of the City of Chicago. The traffic signals at the intersection of 63rd and Halsted Streets are of the normal type and light sequence. There are three sets of lights facing in each direction. If the light is amber for pedestrians traveling north and south, it is red for the traffic on 63rd Street. The amber light lasts for three seconds when changing from green to red.

At the close of all the evidence defendants made a motion for directed verdict. The court reserved its ruling. The jury found for plaintiff and assessed damages at $16,000. The defendants' motion for a directed verdict was renewed and denied.

At defendants' request a special interrogatory had been submitted to the jury: "Was the defendant, Curtis L. Curry, guilty of negligence which was the proximate cause of the injuries sustained by the plaintiff, Anna M. Barbour?" The jury answered the special interrogatory, "Yes." In their post-trial motion and their notice of appeal, defendants alleged there was no evidence presented at trial either proving them guilty of negligence or proving their acts were the proximate cause of plaintiff's injuries. However, defendants did not specifically challenge by name the special finding of the jury. In fact, defendants first mention the special interrogatory in their reply brief.

OPINION

Plaintiff initially contends that defendants have failed to preserve for review the issue of whether the trial court improperly denied their motions for a directed verdict and a judgment *n.o.v.* She argues that because defendants did not specifically challenge the special finding of the jury in their post-trial motion, defendants are now precluded from raising that issue on appeal. (Ill. Rev. Stat. 1975, ch. 110, par. 68.1(2).) Plaintiff reasons that even if we found for defendants and reversed on the issues they now contest, the special finding of the jury would control and the original verdict would have to be sustained. See *Huff v. Illinois Central R.R. Co.* (1972), 4 Ill. App. 3d 113, 280 N.E.2d 256.

We first note that plaintiff's logic is faulty. Even if a party is bound by an answer to an interrogatory which he fails to attack, reason dictates he is bound only as to those issues actually decided by the jury's special finding. Here, the special interrogatory was not dispositive of the case because it failed to address itself to the issue of contributory negligence. Thus, were we to decide that the court is precluded review as to those issues decided by the jury's special finding, defendants could still challenge the verdict as to contributory negligence.

More importantly, the Supreme Court in *Wozniak v. Segal* (1974), 56 Ill. 2d 457, 308 N.E.2d 611, held that while a litigant is conclusively bound

by an answer to a special interrogatory unless he raises it in his post-trial motion, the court is not similarly bound. The judiciary has the power in such instances to consider the special finding in order to do substantial justice to the parties.

■■ In the instant case, although defendants did not specifically mention the special interrogatory in either their post-trial motion or their notice of appeal, they did object in both motions to the conclusions which the jury reached in its special finding. There is no magic in a specific reference to a jury's special finding and, as here, where the post-trial motion was couched in the language of the special interrogatory, we hold that the motion was sufficiently specific to put the trial court on notice that the finding of the jury was being challenged. *Fopay v. Noveroske* (1975), 31 Ill. App. 3d 182, 189, 334 N.E.2d 79, 85-86; *Stringer v. McHugh* (1975), 31 Ill. App. 3d 720, 334 N.E.2d 311.

■■ We next consider the merits of defendants' contention. They argue that although plaintiff's testimony contains some evidence to substantiate a case of negligence it is unsupported, and in fact, contradicted by the rest of the evidence. They also argue that plaintiff's testimony is contrary to general knowledge and experience and we should therefore give it little credence. Relying on the rule set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, that verdicts ought to be directed and judgments *n.o.v.* entered where all the evidence viewed in the aspect most favorable to the party against whom the motion is directed so overwhelmingly favors the movant that no contrary verdict could stand, they urge us to reverse the rulings of the trial court.

Defendants first argue that plaintiff crossed 63rd Street against a red light. They insist that it is plaintiff's contention that the light was amber when the bus pulled away. Because Curry, Davis, and Lahori all testified the light was green and Pool testified east-west traffic has a red light when north-south traffic has amber light, defendants conclude that plaintiff's testimony on this point must be false.

Defendants' interpretation of plaintiff's testimony is incorrect. Plaintiff did not testify that she saw the light change to amber but rather, she stated that when she reached the front of the bus she noticed the light was already amber. Because the amber light is only three seconds long, she may have noticed the amber light only at the end of this three-second interval. With this in mind, we now consider the remainder of her testimony. After she noticed the light was amber, she yelled, heard a crunching noise and she then saw the bus move "a little." She does not state the bus pulled away at this time. The bus may have moved slightly as the driver released the brake. She then turned, ran and after two or three steps was struck. It is apparent that there was an interval between

the time she first saw the amber light and the time the bus pulled away. Obviously during this interval the light changed from amber to red for plaintiff and from red to green for the bus. Then, as Davis testified, the bus pulled away immediately. Plaintiff's testimony is entirely consistent with other witnesses.

Moreover, plaintiff does not contend that the bus ran a red light, rather she merely asserts that she was lawfully within the crosswalk when the light changed. Ill. Rev. Stat. 1970, ch. 95½, par. 11—306(e)1.

Defendants next argue that because plaintiff was found partially under the bus and between its wheels (although admittedly she was not run over by a wheel) that reason dictates she ran into the side of the bus.

We disagree. There is considerable disagreement as to the position of plaintiff after the occurrence. She testified that when she regained consciousness she was "underneath the bus." Defendant Curry stated that plaintiff's head was under the bus while Davis remembers that only plaintiff's neck and shoulders were exposed. Lahori originally said in a statement to the C.T.A. that plaintiff was "under the bus." However, later at trial he testified she was only "partially under the bus." In light of such conflicting testimony, we are unable to determine where plaintiff landed after she was struck. Plaintiff did not testify that the wheels went over any portion of her body. And her statement that the bus drove over her when considered with the other testimony that she was knocked unconscious and regained consciousness underneath the bus, cannot be said to be so inherently improbable as to warrant a directed verdict.

Defendants also argue that a woman of plaintiff's age, height and weight would have sustained much more serious injuries if half the bus had passed over her body as she claims.

The variables determining the injuries in such occurrences are innumerable. However, plaintiff's injuries, which are set out in the facts, are not slight. She spent 2½ weeks in the hospital. The uncontradicted testimony of Dr. Hutchinson is that the injuries which plaintiff suffered could have been caused by being struck by a bus. Absent medical testimony to the contrary, we are in no position to say that plaintiff's injuries were so improbable that a jury deliberation on this issue would have been improper.

Lastly, defendants argue that Curry's testimony that he looked all around before pulling away and that he saw no pedestrians clearly contradicts plaintiff's assertion that she was struck by the front of the bus.

Plaintiff testified she was struck by the front of the bus whereas Curry said she was not in front of the bus when he pulled away. He stated he had to look to his right (away from the direction where plaintiff was coming from) to see the traffic light. He also stated on cross-examination "it doesn't take but a second to look around to see if anybody is in front of

the bus." Further, it was brought out at trial that Curry twice stated at his deposition that he "didn't cross Halsted because she [plaintiff] fell." Davis testified that the only time lapse between the light changing to green and the bus pulling away was "the time it takes to press an accelerator." From the testimony the jury could have believed that Curry started the bus without looking for the presence of pedestrians.

Where the evidence presented at trial is conflicting, it is the sole function of the jury, as the fact-finding body, to determine where the truth lies. (*Douglas v. Chicago Transit Authority* (1972), 3 Ill. App. 3d 318, 279 N.E.2d 44.) The issues defendants raise here were properly submitted to a jury.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and DRUCKER, JJ., concur.