JUDITH BROSTOFF *et al.*, Plaintiffs-Appellants, *v.* ANGELA MAIDA *et al.*, Defendants-Appellees.

First District (5th Division)    No. 62556

Opinion filed January 28, 1977.

George N. Gordon Associates, P. C., of Chicago (Richard H. Forbes, of counsel), for appellants.

Christine E. Smith, of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, judgment was entered in favor of defendants in a suit for damages for personal injuries sustained in a two-car collision. On appeal plaintiffs contend: (1) the verdict is against the manifest weight of the evidence, (2) the trial court erred in denying their motion for a directed verdict and judgment *n.o.v.*, and (3) the trial court erred in instructing the jury.

At trial the following pertinent facts were adduced.

*For the plaintiff:*

*Michael Brostoff*

He drove the car in which plaintiffs were riding when this accident occurred. At about 1 p.m. on October 29, 1968, he was in a funeral procession driving south on Nagle Avenue. His vehicle was approximately the 20th to the 25th car in a procession of from 60 to 80 cars. His lights were on and he had a funeral procession sticker on his front windshield. When he was "5 to 10 car lengths" from Foster, the traffic light for Nagle was green. It did not change until he was halfway across the intersection. Just past the centerline of the intersection he collided with defendants' automobile.

He observed defendants "just going into the intersection." They were traveling at between 30 and 40 m.p.h. He was traveling at between 5 and 10 m.p.h. and he was about 15 feet *behind* the car *in front of him*, which was driven by Janice Goldstein.

On cross-examination, he admitted that during his deposition of February 10, 1972, he could not remember when he had first seen the traffic light. Also, although during his deposition he said that Janice Goldstein was a "couple" of cars *behind him*, he now recalls that she was directly *behind him*.

He also stated that there were three to four cars stopped at Nagle in the left lane headed eastbound on Foster. Defendants were in the right lane.

*Judith Brostoff, on her own behalf*

She was seated in the front seat of the car driven by her husband, Michael Brostoff. She substantially corroborated his testimony, however, she thought they were traveling at between 15 to 20 m.p.h.

On cross-examination, she admitted that she does not know what color the light was when they entered the intersection.

She further acknowledged that she was not wearing a safety belt at the time of this occurrence. Her head hit the windshield and she suffered a bump on the upper right side of her head.

*Eva Gordon on her own behalf*

She was seated in the backseat of the car driven by her nephew, Michael Brostoff. She did ot see how the accident occurred. However, she does recall that they were only 10 to 15 feet behind the car in front of them.

*Janice Goldstein*

She drove the automobile immediately behind Brostoff in the funeral procession. She was in the front third of a 25- to 40-car procession. Brostoff was at most a "couple" of car lengths in front of her and about one or two car lengths behind the vehicle in front of him.

She saw defendants' vehicle moving at a "good speed" east on Foster.

The driver's face was turned to the right, away from her, as though she were talking with someone on her right.

*Angela Dudek (formerly Angela Maida) under section 60.*

She drove the car that collided with Brostoff's vehicle. She was driving eastbound on Foster approaching Nagle. It was a fair and clear October day. Visibility was good. Foster is a four-lane street with the right lanes sometimes reserved for parking. At this point the street is level.

When she was about one block from Nagle, she changed to the right lane because there was a car stopped in the left lane at Nagle. She could see traffic on Nagle crossing the Foster-Nagle intersection. Because she had a red light, she reduced her speed, finally slowing to 10 m.p.h. when she was still 150 feet from Nagle. She continued at that speed for another 50 feet when the light for Foster traffic turned green and the traffic on Nagle ended. At this point she had a clear, unobstructed view of the intersection. Increasing her speed to 15 m.p.h., she looked both ways before entering the intersection, but saw no traffic on Nagle. When she was "halfway past the center of Nagle" a collision occurred. She did not see the car that struck her before the accident.

On direct examination, she stated that her vehicle was struck in the left rear. When she entered the intersection, traffic on Foster had a green light and traffic on Nagle had a red light.

*Carolyn Rey (formerly Carolyn Catanesi) under section 60.*

She was a passenger in and owner of the car that collided with Brostoff's vehicle. She substantially corroborated the testimony of Angela Dudek on both direct and cross-examination, however, she thought they were traveling at between 20 to 25 m.p.h.

*For defendants:*

*Robert Rey*

He is the husband of Carolyn Catanesi Rey and was engaged to her at the time of this occurrence. When this accident occurred, he was at the intersection of Nagle and Foster attempting to make a left turn north onto Nagle. There was a funeral procession going south on Nagle. After waiting through two red lights, he saw no more cars going south. The light for Foster traffic turned green and he pulled about three to four feet into the intersection. It was then that he saw plaintiffs' car with its headlights on, heading south on Nagle at between 35 and 40 m.p.h. When plaintiffs were still four car lengths north of Foster, the vehicle ahead of them was 200 feet south of Foster. He stopped and plaintiffs' car passed within a "couple of feet" of his vehicle.

He first saw defendants' car when the light for Foster was still red. It was four car lengths behind him traveling at about five to six m.p.h. The light turned green before they reached the intersection. When defendants

were two-thirds of the way across the intersection, plaintiffs' car struck the left rear of defendants' vehicle.

*Leon Kersey, Chicago Police Officer.*

He investigated this accident. Michael Brostoff told him that he entered the intersection on a red light for southbound traffic.

At the close of the evidence plaintiffs moved for a directed verdict, which was denied. The jury returned a verdict of not guilty and judgment was entered for defendants. Subsequently, plaintiffs moved for a judgment *n.o.v.*, which was also denied.

OPINION

Plaintiffs first contend that the verdict is against the manifest weight of the evidence. While conceding that defendants may have had a green light, they assert that defendant Angela Maida Dudek still had a duty to avoid a collision once a danger had been or should have been discovered through the exercise of reasonable care. (*Prignano v. Mastro* (1965), 61 Ill. App. 2d 65, 209 N.E.2d 12.) Citing *Payne v. Kingsley* (1965), 59 Ill. App. 2d 245, 207 N.E.2d 177, for the proposition that a defendant cannot claim he looked, but did not see that which was evident, they argue that she should have seen plaintiffs' vehicle. They point out that even Rey, defendants' own witness, testified that plaintiffs' vehicle was only four car lengths north of Foster when Angela claims she checked for traffic on Nagle, but did not see plaintiffs' approaching vehicle, although plaintiffs' vehicle had its headlights on and a funeral sticker on its windshield. Nor did the procession of cars that preceded plaintiffs' vehicle alert Angela to the danger of a collision. Plaintiffs conclude, therefore, that under any reasonable interpretation of the facts here, Angela should have seen their vehicle as part of a funeral procession and yielded the right-of-way.

Where the evidence is conflicting, it is for the trier of fact to determine where the truth lies and the reviewing court will not reverse their determination unless it is against the manifest weight of the evidence. (*Douglas v. Chicago Transit Authority* (1972), 3 Ill. App. 3d 318, 279 N.E.2d 44.) For a verdict to be against the manifest weight of the evidence an opposite conclusion must be clearly evident or the verdict must be palpably erroneous and wholly unwarranted. *Walters v.Taylor* (1976), 36 Ill. App. 3d 934, 344 N.E.2d 765, 769.

The *Payne* rule, upon which plaintiffs rely, is inapplicable here because it "is dependent upon a claim of not seeing a clearly visible object." (*Krause v. Henker* (1972), 5 Ill. App. 3d 736, 740, 284 N.E.2d 300, 303.) Although Angela testified nothing obstructed her view of the intersection, there was other testimony from which the jury could easily conclude that plaintiffs' vehicle was not "clearly visible" to her. Rey's testimony that he pulled his automobile partially into the intersection preparatory to

making a left turn, as well as the Brostoffs' admission that there were several other vehicles behind Rey created an issue of fact as to whether these cars blocked Angela's vision to the north.

■■■ More importantly, however, even if Angela had seen plaintiffs' vehicle, it is still a question of fact as to whether she was negligent in not yielding to plaintiffs. Motorists who have a green light may assume the intersecting traffic will stop. (*Yelinich v. Capalongo* (1962), 38 Ill. App. 2d 199, 186 N.E.2d 777.) Although the right-of-way is given to the motorist having the green light, plaintiffs correctly point out that the preferred motorist is not excused from acting with reasonable care. (*Prignano v. Mastro* (1965), 61 Ill. App. 2d 65, 209 N.E.2d 12.) However, whether defendant exercised such care has consistently been held to be a question to be determined by the trier of fact. (*Conner v. McGrew* (1961), 32 Ill. App. 2d 214, 177 N.E.2d 417.) In the instant case, adequate evidence was adduced which, if believed, would support the jury's verdict.

Although Angela testified that she saw traffic on Nagle when she was about a block away, she denied knowing that it was a funeral procession. However, even if she had known this, Rey testified to a gap of more than 200 feet between plaintiffs' car and the vehicle in front of them, a space which would normally indicate that the procession had ended. Similarly, because she may have seen plaintiffs' car does not necessarily mean she noticed the lighted headlights or the funeral sticker as plaintiffs suggest. And if she had, there is no proof that she grasped their significance or was able to react in time to avoid the collision. The jury obviously chose to believe her that she approached Nagle, saw no signs of danger, and proceeded through on a green light. Simply because plaintiffs have offered conflicting testimony, we cannot say that it was error for the jury to believe defendants. *Douglas v. Chicago Transit Authority* (1972), 3 Ill. App. 3d 318, 279 N.E.2d 44.

■■ Plaintiffs have also set forth these same arguments in support of their contention that the trial court erroneously denied their motion for a directed verdict and judgment *n.o.v.* However, having decided that these arguments were insufficient to reverse the verdict as being against the manifest weight of the evidence, it logically follows that they could not meet the stricter standard applied to directed verdicts and judgments *n.o.v. Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■■ Plaintiffs set forth one other argument in support of their contention that the verdict was against the manifest weight of the evidence. They argue that Goldstein's testimony that Angela had her head turned to the right (away from plaintiffs' vehicle) establishes that she failed to even look. Because she claims she did look, this testimony merely created another conflict in the evidence to be decided by the trier of fact.

*Douglas v. Chicago Transit Authority* (1972), 3 Ill. App. 3d 318, 279 N.E.2d 44.

Finally, plaintiffs contend that it was error for the trial court to instruct the jury on mitigation of damages for the nonuse of seat belts. However, in light of our disposition of plaintiffs other contentions, we need not reach this issue.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.