HENRY J. DePAEPE, Plaintiff-Appellant, *v.* JOSEPH WALTER, Defendant-Appellee.

First District (1st Division) No. 77-1341

Opinion filed February 13, 1979.

Edward G. Finnegan, of Chicago (William J. Harte and Ludwig E. Kolman, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Patterson Gloor and Stanley J. Davidson, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Henry J. DePaepe (plaintiff) sued Joseph Walter (defendant) for damages suffered in an automobile collision. After trial, the jury returned a general verdict of not guilty for defendant and made a special finding that plaintiff was contributorily negligent. The trial court entered

judgment on the verdict and subsequently denied plaintiff's post-trial motion.

Plaintiff appeals, arguing that the general verdict and special finding are against the manifest weight of the evidence and defendant's injection of insurance and other collateral source payments into the trial requires reversal and remandment for a new trial.

Plaintiff testified that on August 15, 1972, at about 4:30 p.m., he was returning home from work driving south on Austin Avenue. On approaching Foster Avenue in the curb lane, he observed that the Austin Avenue traffic light was red. He stopped at the white line. To the left his vision was unobstructed; there were no cars in the next lane. About 30 seconds after he stopped, the Austin Avenue light changed to green. Looking to the left, he saw nothing. To his right, he saw that eastbound Foster Avenue traffic had stopped. The light was still green, so he started out. He did not look at any other light to make sure that the light on the southeast corner of the intersection was correct. Eastbound traffic on Foster was stopped for several seconds before he pulled out. When he got to 10 miles per hour, he heard screeching and looked to his left. A green car, driven by defendant and going approximately 35 miles per hour, was about to hit him. He started to turn the steering wheel to his right, jammed on his brakes and gripped the steering wheel. The front of the green automobile struck plaintiff's vehicle on the left side, from the driver's door to the front fender. His automobile came to rest in the intersection, with its back bumper south of the southbound Austin Avenue stop line. Defendant, when asked by plaintiff why he ran the red light, said he did not know.

On cross-examination, plaintiff stated he did not remember if there were cars to his left on Austin Avenue when he stopped for the Foster Avenue light. Before proceeding to cross Foster, plaintiff looked to the right and saw that the eastbound traffic had stopped, looked to the Foster Avenue light again and then pulled out; it had to be six seconds or better. It was long enough for the eastbound Foster traffic to halt. Plaintiff first saw defendant when the latter was 15 feet away. Almost immediately after he saw defendant, there was impact. About one second after he saw the car, it hit him. He was able to estimate defendant's speed in that second between seeing defendant and impact. Although he heard squealing brakes, defendant's speed did not change.

When called by defendant as an adverse witness, plaintiff testified that he could see about 150 feet when he looked to his left. He could not recall whether there were any vehicles waiting to go north on Austin Avenue.

Charles L. Tannehill testified that on August 15, 1972, he stopped for the Foster Avenue light while southbound on Austin Avenue. At Foster

Avenue southbound, Austin has a left turn lane and two through lanes. He saw no eastbound traffic. Plaintiff's car was in front of him in the curb lane, two cars were in the center lane and two in the left turn lane when the Foster Avenue light changed to green and he and plaintiff started out. Tannehill began moving a second or two after the light changed to green. He assumed plaintiff started out with the light. After the light changed, two or three seconds elapsed before plaintiff moved. He first saw defendant's car when it was in the intersection. Its brakes were screeching. Plaintiff had reached the Foster Avenue center line at the time of impact. Plaintiff's car came to rest in the inner eastbound lane of Foster Avenue.

Tannehill testified on cross-examination that plaintiff's car and his were the only cars that began to move south on Austin Avenue. Defendant was not speeding; he was doing less than 30 miles per hour at impact.

Defendant Joseph Walter testified that he had an accident at Foster and Austin Avenues while returning home from work on August 15, 1972. On approaching Austin westbound on Foster, the light turned yellow. He was almost in the intersection when the light turned yellow. He was going about 30 miles per hour. He told neither plaintiff nor the police that he had gone through the red light.

On cross-examination, defendant stated that he first saw plaintiff's car when it was four to five feet away. He was across the Austin Avenue center line when he saw plaintiff. He braked. Defendant saw the Austin Avenue light when he was a block away and it was red. Before he reached the intersection, it changed to green and the light was yellow when he entered the intersection. Defendant could not stop, although he braked when the light turned yellow. He could not recall whether there was a car behind him. Responding to the police, he said, "I was too close in light and I couldn't stop."

Plaintiff contends that the verdict and the answer to the special interrogatory are against the manifest weight of the evidence. We do not agree.

Plaintiff testified that he was in the curb lane on Foster and did not start his car in motion until at least six seconds after the traffic light for Foster Avenue traffic had changed to green and that he looked both ways before starting and had seen no moving traffic on Austin; thus, he contends, it is apparent that defendant had run the red light for Austin Avenue traffic. He also testified that when he asked defendant why he had run the red light, defendant replied that he did not know. Defendant testified that when the green traffic light for Austin Avenue changed to yellow he was too close to the light and could not stop. He denied that he had ever said that he had gone through the red light. Tannehill, who was

immediately behind plaintiff, testified that plaintiff started two or three seconds after the light for Foster Avenue had turned green. He further testified that there were two stopped cars in the center lane and two stopped cars in the left turn lane east of plaintiff and him when the light changed to green. His car and plaintiff's car were the only cars which began to move.

Thus the evidence was conflicting and it was the sole function of the jury, as the fact-finding body, to determine where the truth lay. (*Barbour v. Chicago Transit Authority* (1976), 41 Ill. App. 3d 888, 354 N.E.2d 519; *Douglas v. Chicago Transit Authority* (1972), 3 Ill. App. 3d 318, 279 N.E.2d 44.) A reviewing court will not reverse their determination both as to their verdict and their answer to a special interrogatory unless against the manifest weight of the evidence. (*Brostoff v. Maida* (1977), 45 Ill. App. 3d 871, 360 N.E.2d 568; *Sandquist v. Kefalopoulos* (1977), 49 Ill. App. 3d 456, 364 N.E.2d 475.) In determining whether a verdict is against the manifest weight of the evidence, it is not enough to show that there is evidence to support a contrary judgment. (*Trauscht v. Gunkel* (1978), 58 Ill. App. 3d 509, 374 N.E.2d 843.) The appellate court must take into account the jury's verdict and the judge's observation of the witnesses and the arguments in ruling on the post-trial motion. (*Prignano v. Mastro* (1965), 61 Ill. App. 2d 65, 209 N.E.2d 12.) The evidence in favor of the appellant must be so strong as to overwhelm the evidence favoring the opposing party. (*People ex rel. Dizney v. Witt* (1975), 26 Ill. App. 3d 45, 324 N.E.2d 433.) A judgment will not be reversed merely because the judges feel that other conclusions would be more reasonable. *Prignano.*

■■ In this case it cannot be said that on the evidence an opposite conclusion was so clearly evident that the jury's verdict and the answer to the special interrogatory were against the manifest weight of the evidence. Even if it be presumed for sake of argument that plaintiff entered the intersection on a green light and defendant went through a red light, the question of liability remained to be decided by the jury.

■■■ A driver cannot rely blindly on a green light. (*Prignano v. Mastro* (1965), 61 Ill. App. 2d 65, 209 N.E.2d 12.) A green light does not give an absolute right to enter an intersection without maintaining a proper lookout and does not prevent a finding of negligence against a driver. (*Thomas v. Yellow Cab Co.* (1976), 36 Ill. App. 3d 957, 344 N.E.2d 505.) The disregard of a traffic light is not negligence as a matter of law and the violation of a traffic ordinance is but one factor to be considered by the finder of fact in deciding the issue of liability. (*Kallas v. Lee* (1974), 22 Ill. App. 3d 496, 317 N.E.2d 704.) Under the evidence presented, we cannot say that the verdict and answer to the special interrogatory were against the manifest weight of the evidence.

■■ Plaintiff argues that he is entitled to a new trial because defendant

intentionally injected insurance and other collateral source payments into the trial. This argument is without merit. Plaintiff's contention is based on the following cross-examination of plaintiff's wife:

"Q. You indicated that you were working in 1972, I think—
A. No.
Q. Or '73, I'm sorry, because of a decrease in income?
A. Definitely.
Q. All the medical bills were paid, though, weren't they?
A. Most of them. We had to pay the balance.
Q. Most of them were paid, though, weren't they, by the railroad retirement fund?
A. By the insurance company.
Q. Well—
A. But we had—there were balances that we had to pay. They didn't pay everything."

Plaintiff failed to object to any of the above questioning or to request that the jury be instructed to disregard Mrs. DePaepe's response. In order to preserve a question for review, there must normally be timely objection. (*Sramek v. Logan* (1976), 36 Ill. App. 3d 471, 344 N.E.2d 47, *appeal denied* (1976), 63 Ill. 2d 563.) Also because plaintiff failed to include any mention of this claimed error in his post-trial motion, it is waived on appeal (Ill. Rev. Stat. 1977, ch. 110, par. 68.1(2); *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 369 N.E.2d 155, *appeal denied* (1978), 71 Ill. 2d 601), unless it is so prejudicial as to deny the right to a fair trial. (*Sramek.*) Here, the record shows that the original reference to plaintiff's receipt of money from collateral sources was made by plaintiff's wife in response to plaintiff's counsel's question:

"Q. Now, Mrs. DePaepe, I've asked you a question. What money were you receiving for the family?
A. We were getting $12 a day from railroad retirement.
Q. All right. And you went to work to support your family?
A. That's right. I did."

The claimed error occurred when she mentioned insurance in response to a question concerning railroad retirement funds during cross-examination. We find that this single inadvertent reference to insurance by plaintiff's wife was not so prejudicial to plaintiff as to require a new trial.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.