GENE C. LODE, Plaintiff-Appellant, *v.* LOUIS S. MERCANIO *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 77-454

Opinion filed September 26, 1979.

Montcastle & Da Rosa, and Lloyd E. Dyer, Jr., both of Wheaton, for appellant.

Christine E. Smith, of Chicago, for appellee John A. Buckles.

Francis D. Morrissey, Patrick J. Reynolds, and John T. Rank, all of Baker & McKenzie, for appellee Louis S. Mercanio.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Gene C. Lode brought this negligence action against Louis S. Mercanio and John A. Buckles to recover damages for injuries he suffered when a collision occurred between a fire truck, in which he was a passenger, and two automobiles driven by the defendants. A lawsuit was also instituted against the defendants by James Pierce, the driver of the fire truck. Pursuant to the defendants' motion, the cases were consolidated. Thereafter, plaintiff Lode was granted leave to amend his complaint and to add as additional defendants the Village of Worth and James Pierce. That portion of plaintiff Lode's complaint relating to the Village of Worth and James Pierce was subsequently dismissed as Gene Lode was barred from asserting any common law right to recover damages from his employer or a fellow employee. Ill. Rev. Stat. 1977, ch. 48, par. 138.5.

Defendants Mercanio and Buckles also filed countercomplaints and third-party complaints against James Pierce and the Village of Worth, which were dismissed with prejudice prior to trial. At trial and at the close of all evidence, motions for a directed verdict were made by plaintiff Lode and the defendants. All motions were denied with the exception of the court's finding that Lode was free from contributory negligence as a matter of law. The jury in the Circuit Court of Cook County returned a verdict finding both defendants not guilty and answered a special interrogatory that the driver of the fire truck, James Pierce, was guilty of contributory negligence. The trial court entered judgment and denied the post-trial motions of Lode and Pierce for judgment notwithstanding the verdict and for a new trial.

Lode brought this appeal alleging that the trial court erred in denying his motions for directed verdict, judgment notwithstanding the verdict and for a new trial. Pierce is not a party to this appeal.

The collision involving the parties to this lawsuit occurred at the intersection of Harlem Avenue and Southwest Highway in Worth, Illinois. Harlem Avenue and Southwest Highway do not intersect at right angles; Harlem runs in a north-south direction and Southwest Highway runs in a northeast-southwest direction. Both streets have two forward lanes of traffic in each direction in addition to designated turning lanes.

The evidence shows that at approximately 8 a.m. on April 11, 1973, a Village of Worth fire truck, driven by Pierce, proceeded north on Harlem in response to a fire alarm. The fire truck was also occupied by Lode, who

stood on the right rear, and Charles Templin, who rode in the cab of the truck. The two defendants, Mercanio and Buckles, were each stopped at a red light in the southwestbound lanes of Southwest Highway. Buckles was in the middle lane. To his left was a car in the left-turn lane and to his right was Mercanio.

The defendants testified that, while they were waiting for the traffic signal to turn green, they heard a siren. Through their rearview mirrors, they saw a squad car with its emergency lights operating, proceeding southwest on Southwest Highway. They also testified that when their light turned green, they attempted to make a passageway to permit the squad car to go through the intersection. Buckles pulled forward into the intersection and edged toward the right into Mercanio's lane.

The fire engine was simultaneously proceeding north on Harlem with its emergency lights, siren and air horn operating. It was in the left lane of northbound traffic as it approached the intersection of Harlem and Southwest Highway. There were no northbound vehicles directly in front of the truck but cars were traveling ahead of the truck in the righthand northbound lane. As the fire truck proceeded into the intersection, it swerved to the right to avoid hitting Buckles' car. This maneuver failed and the fire truck collided with Buckles' car and then Mercanio's car.

Testimony at the trial concerning the view of the drivers, the speed of the vehicles as they entered the intersection and the color of the traffic signal when the fire truck entered the intersection was conflicting. Mercanio testified that his view of the Harlem Avenue northbound lanes was obstructed by the southwestbound cars on Southwest Highway in the two lanes to his left. Buckles could not remember if his vision was obstructed but testified that when the traffic signal for Southwest Highway vehicles turned green, he did look at the traffic on Harlem and it was standing still. Neither defendant saw the fire truck prior to the impacts.

Pierce testified that, when he was 50 feet from the intersection, there was no movement. He further stated that it was hard to see the vehicles at the northeast corner of Southwest Highway and first observed the defendants' vehicles moving when he was a quarter to halfway into the intersection. At that time, no other vehicles on Southwest Highway were moving.

The plaintiff admitted that he did not see Buckles' car prior to or during the collision, nor did he see the actual impact between Mercanio's car and the fire truck. Templin testified that he saw both defendants move when the front end of the fire truck was into the intersection near the northeastbound lanes of Southwest Highway. He stated that the intersection was clear of all traffic when the fire truck entered it.

Testimony regarding the speed of the vehicles prior to the collisions

was also contradictory. Buckles testified that when the light turned green for Southwest Highway traffic, he proceeded at a speed of five to eight miles per hour while attempting to edge into the right lane of southwestbound traffic ahead of Mercanio, and that he never accelerated. Mercanio stated that he attained a speed of five miles per hour but stopped either before or at the time of the impact between the fire truck and Buckles' car. Pierce stated that the car driven by Buckles accelerated rapidly and was going about 15 miles per hour at the moment of impact. He did not know whether Mercanio was moving or stopped at the time of impact.

It is undisputed that the fire engine had attained a maximum speed of 40 to 45 miles per hour as it proceeded north on Harlem. However, Pierce and Lode testified that the truck slowed to a speed of 20 to 25 miles per hour as it neared the intersection. Templin said the fire truck slowed down, but he could not estimate its speed.

Beverly Balis, a disinterested witness, testified that she was stopped in the left-turn lane of Southwest Highway at Harlem facing northeast. While waiting for the red light to change, she heard a siren, turned her head to the right and saw the fire engine approaching the intersection. She could not recall whether the fire truck had slowed down before entering the intersection, but testified at trial that it was just about entering the intersection when the light for Southwest Highway traffic turned green. Ms. Balis, on cross-examination, stated that she had given a statement to the Worth Police Department that the fire truck was "just a little bit before the intersection" when the light controlling northbound traffic on Harlem turned red.

Daniel Heinze, also a disinterested witness, testified that he followed the fire truck northbound on Harlem Avenue for approximately two blocks prior to the accident. According to this witness, the truck was traveling at a speed of 40 to 45 miles per hour and did not slow down as it approached Southwest Highway. Heinze further testified that the fire truck went through a red light at Harlem and Southwest Highway at the same time that the defendants' vehicles on Southwest Highway were moving forward.

Pierce and Templin testified that when the truck was approximately 50 feet south of the intersection, the light for Harlem northbound traffic was green. Pierce also stated, however, that he did not know the color of the traffic signal when he entered the intersection and that the northbound vehicles on Harlem to the right of the truck were stopped at the intersection when he approached it. Templin testified that the Harlem traffic signal turned red as the fire truck entered the intersection or just before it entered the intersection and that the defendants' vehicles proceeded forward after the fire truck was into the intersection. On cross-

examination, however, Templin stated he did not see the light when it turned red for northbound Harlem traffic.

In bringing this negligence action the plaintiff had the burden of establishing four essential elements: first, a duty imposed by law on the defendants to exercise care; second, the failure of the defendants to perform that duty; third, an injury proximately caused by the defendants' failure to perform that duty; fourth, the plaintiff's exercise of ordinary care for his own safety. (*Illinois Central R.R. Co. v. Oswald* (1930), 338 Ill. 270, 170 N.E. 247.) It is preeminently the function of the jury to determine whether the defendant exercised reasonable care, whether his failure proximately caused the plaintiff's injury and whether the plaintiff was contributorily negligent. (*Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 382 N.E.2d 232 (reasonable care); *Zvonarits v. Vollen* (1978), 64 Ill. App. 3d 958, 382 N.E.2d 18 (proximate cause and contributory negligence).) In the case at bar the trial court ruled as a matter of law that the plaintiff was not guilty of contributory negligence. Lode contends, however, that the defendants were negligent as a matter of law because they failed to maintain a proper lookout when entering the intersection and proceeding into the path of the fire truck. He contends that the defendants would have seen the fire truck had they looked to their left. Under the standard set forth by the supreme court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, however, verdicts are to be directed and judgments notwithstanding the verdicts are to be entered in jury trials where all the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. Accord, *Jardine v. Rubloff*; *Ryan v. Blakey* (1979), 71 Ill. App. 3d 339, 389 N.E.2d 604; *Zerbenski v. Tagliarino* (1978), 67 Ill. App. 3d 166, 384 N.E.2d 753.

The duty of a driver at an intersection controlled by traffic control signals has been codified in section 11—306 of the Illinois Vehicle Code. Vehicular traffic facing a green light may proceed through the intersection but must yield the right-of-way to other vehicles and pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited. (Ill. Rev. Stat. 1977, ch. 95½, par. 11—306(a)(1).) A motorist's right-of-way is not absolute. He must drive, as a prudent person would, to avoid a collision when danger is discovered or should have been discovered by the exercise of reasonable care. *Prignano v. Mastro* (1965), 61 Ill. App. 2d 65, 209 N.E.2d 12; *Pfister v. West* (1964), 53 Ill. App. 2d 305, 203 N.E.2d 35.

Examining the evidence in the case at bar, we cannot say that, when viewed most favorably to the defendants, the evidence so overwhelmingly favors the plaintiff that no contrary verdict could ever stand. The evidence favorable to the defendants shows that they were stopped

in two southwestbound lanes of traffic on Southwest Highway waiting for the traffic signal to turn green. While waiting, they heard a siren, looked into their rear view mirrors, saw a squad car with its emergency lights operating and assumed the siren came from this vehicle. The defendants testified that when the traffic light for southwestbound traffic turned green, they proceeded slowly into the intersection. Buckles moved ahead and into the lane to his right in front of Mercanio to make a pathway for the squad car.

Although neither defendant saw the fire truck prior to the impacts, the plaintiff's assertion that they failed to keep a proper lookout is not conclusive. Buckles testified that when the traffic signal for Southwest Highway vehicles turned green, he did look to the vehicles on Harlem and the traffic there was standing still. Mercanio testified he did not look to the northbound traffic on Harlem because his view of the northbound Harlem Avenue lanes was obstructed by the southwestbound cars on Southwest Highway in the two lanes to his left. Additional testimony favorable to the defendants shows that Pierce entered the intersection at a high rate of speed. Daniel Heinze testified that the truck was traveling at a speed of 40 to 45 miles per hour as it approached the intersection.

■■ In view of this testimony, one could conclude that the defendants could not see the fire engine approaching the intersection when the light turned green and that they reasonably believed the sound of sirens originated from the squad car behind them. Since a verdict in favor of the defendants could stand, the trial court was correct in denying the plaintiff's motion for a directed verdict at the close of all the evidence. The determination of whether the defendants were negligent was a proper question for the jury to decide. Similarly, the trial court's denial of the plaintiff's motion for judgment notwithstanding the verdict was proper and in accordance with the *Pedrick* standard discussed above. Verdicts should not be set aside merely because juries could have found differently or because judges feel that other conclusions would be more reasonable. *Jardine v. Rubloff.*

Lode also contends that the trial court did not apply the *Pedrick* standard when ruling on his motion for a directed verdict. He alleges that the trial court was convinced that the defendants were guilty of negligence but denied the motion because granting it might prejudice the defendants in their case against Pierce. An examination of the record, however, indicates that when the trial judge granted Lode's motion finding him free from contributory negligence, he was convinced that conflicting evidence required that the jury decide whether the defendants were negligent. This is exemplified by the following dialogue that occurred immediately after the trial judge indicated he was "inclined" to grant Lode's motion:

"The Court: We are going to let the jury decide on the basis of the testimony, the conflicting testimony. We're going to let them make that determination.

I will grant one motion and deny the other two.

\* \* \*

[Defendant Buckles' counsel]: Then you are saying there's negligence on the part of the two defendants?

The Court: I'm saying there could be negligence on the part of the defendants if the jury so decides. Neither of them looked to the left.

[Defendant Buckles' counsel]: But Judge, then you are saying that he has freedom from contributory negligence?

The Court: Lode, yes."

The trial judge again explained his position when he stated the following:

"The Court: What I'm trying to get at is \* \* \* that in the event the jury has reached a point in its verdict, Lode has a clear.

[Defendant Buckles' counsel]: No contributory negligence?

\* \* \*

The Court: That is what I intended."

At no time during the oral arguments for a directed verdict did the trial judge state that Lode had proven all four elements of his negligence action. Counsel for the defendants repeatedly argued that the proximate cause issue was a question of fact for the jury to decide. The trial judge agreed when he stated: "It is a question of fact whether Mercanio was [the proximate cause of Lode's injuries]. This is for the jury."

The record does indicate a concern by the court that granting Lode's motion in its entirety would foreclose the defendants of a defense with respect to Pierce. However, it is not apparent from the record that this opinion by the judge was the sole consideration in the denial of Lode's motion as to the issue of liability.

The plaintiff also argues that the trial court erred in denying his motion for a new trial. We disagree. On a motion for a new trial the court will weigh the evidence, set aside the verdict and order a new trial when the verdict is contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) A verdict is against the manifest weight of the evidence if an opposite conclusion is clearly evident or the verdict is palpably erroneous and wholly unwarranted. *Brostoff v. Maida* (1977), 45 Ill. App. 3d 871, 360 N.E.2d 568.

At trial, conflicting testimony was offered concerning the vision of the drivers, the speed of the fire truck as it neared the intersection and the color of the traffic signal when the fire truck proceeded into the intersection. The function of the jury was to weigh the contradictory

evidence and inferences, to judge the credibility of the witnesses and to draw the ultimate conclusions of fact. (See *Gettemy v. Grgula* (1975), 25 Ill. App. 3d 625, 323 N.E.2d 628.) That different conclusions or inferences could have been drawn by the jury would not have enabled the trial court to set aside the verdict. (*Johnson v. Skau* (1962), 33 Ill. App. 2d 280, 179 N.E.2d 40.) Furthermore, when ruling on a motion for new trial, the trial judge is afforded discretion because he, too, saw and heard the witnesses and heard the arguments of counsel. We will not reverse his decision unless a clear abuse of discretion is shown. *Tihay v. Aurora City Lines* (1967), 79 Ill. App. 2d 107, 223 N.E.2d 171; *Vasic v. Chicago Transit Authority* (1961), 33 Ill. App. 2d 11, 180 N.E.2d 347.

■ From the facts and reasonable inferences drawn therefrom, the jury reasonably might have concluded that the defendants observed due care in approaching and entering the intersection and that the driver of the fire truck, by proceeding into the intersection at a high rate of speed after the light had turned red, was negligent and the sole proximate cause of the plaintiff's injuries. We do not find an opposite conclusion is clearly warranted. Therefore, we will not substitute our judgment for that of the jury or the trial judge who entered judgment on the verdict.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and RIZZI, J., concur.