THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES DAVIS *et al.*, Defendants-Appellants.

Second District    Nos. 79-537, 79-538 cons.

Opinion filed September 19, 1980.

David M. Smith and Lorence H. Slutzky, both of Robbins, Schwartz, Nicholas & Lifton, of Chicago, for appellants.

William E. Sisler, State's Attorney, of Freeport (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is a consolidated appeal by defendants, James Davis and Melody Farringer, from convictions for battery stemming from two separate incidents. After separate bench trials, defendants were found guilty and sentenced to pay fines of $25 plus costs, and they appeal.

## Davis

Defendant Davis is a 63-year-old bus driver who has been working for the Freeport School District No. 145 for three years. He is responsible for driving 35 sixth- and seventh-grade students home from school. On the afternoon of April 10, 1979, the students boarded the bus in a noisy, disruptive manner, jumping over the seats and yelling out the windows. As the bus proceeded on its trip, some students began throwing candy from the rear of the bus. Defendant stopped the bus and warned the children to quiet down and stop throwing the candy. When defendant resumed driving, the candy-throwing started again; one piece of candy struck defendant and several struck the windshield. Defendant then warned the students that he would slap them if they didn't stop throwing the candy. The candy throwing continued, and defendant stopped the bus a second time. He went to the back of the bus and slapped four students who he believed were throwing the candy. The students testified that the blows did not hurt them; all of the students on the bus, including the students who were struck, responded by laughing at defendant.

Defendant then proceeded to the front of the bus. As he passed Lynette Anderson, who was sitting in the middle of the bus, he observed her say something quietly with a slight smile on her face. He assumed that her comment was disrespectful and directed toward him; he slapped Lynette and proceeded to the front of the bus. Defendant testified that the children then became quiet and he completed the bus route.

The four children at the back of the bus testified that Lynette was hit substantially harder than they were. She was crying afterward and she had a red mark on her face up to one hour later, although there were no bruises or permanent injuries. No one saw Lynette throwing candy. Defendant was charged with battery for each of the five incidents. After a bench trial, the court concluded that the discipline of the four students in the back of the bus was not sufficient to constitute criminal battery and therefore defendant was found not guilty of those four charges. Regarding Lynette, the court believed her testimony about the intensity of the slap and concluded that the blow constituted battery if it were done without legal justification. The court assumed that bus drivers have the right to exercise discipline over students in their care but concluded that in this case defendant acted unreasonably with respect to Lynette, although there was justification for disciplining the four who had thrown the candy. As to Lynette, defendant was found guilty of battery and fined $25 plus costs.

## Farringer

Defendant, Melody Farringer, has been a school bus driver for the Freeport School District No. 145 for three years. She is responsible for transporting 23 children ages 7 through 13 home from school. On the

afternoon of April 12, 1979, the day before Easter vacation, the children were unusually excited. They were yelling and screaming and began throwing candy and grass from their Easter baskets. Defendant was unable to concentrate so she pulled the bus to the side of the road. She told the children to stop throwing things, to pick up the debris, and then to sit down and be quiet. Some of the children followed her directions, but others began using foul and abusive language. Defendant informed the children that she would not drive the bus any farther until they followed her directions and quieted down.

A 7-year-old girl named Marie then came to the front of the bus and told defendant to "get this honky bus going right now, I want to go home." She also called defendant a "bitch" and "mother fucker." Marie then put her hand on the handle that opened the door to the bus. Defendant told Marie that she also wished to go home and if Marie and the others would be quiet and sit down, she would start the bus. Marie responded that she would tell her mother that defendant was making her wait and her mother would "get" defendant. Defendant again told Marie she would start the bus when Marie and the other children were quiet. Marie continued to use abusive language and defendant put her hand to Marie's face and said she would slap Marie if she didn't quit talking that way. Marie again called her a "mother fucker" and said that if defendant didn't start the bus, Marie was going to leave. Defendant then said, "I mean it, Marie, " and slapped her in the face.

Marie then sat down, but the obscene language continued on the bus. Defendant drove to the first two stops and let off those students who had not been misbehaving. She then drove to the administrative office where she asked Mr. Anderson, who is in charge of the transportation of students, to assist her with the children. Mr. Anderson boarded the bus for the remainder of the trip. He did not observe any marks on Marie's face after the incident.

Marie did not testify at trial; however, three students, ages 9 through 11, who were on the bus at the time, did testify. They all stated that the children were noisy and boisterous and they were throwing candy. One of the witnesses testified that none of the children, including Marie, used "swear words" on the bus; however, the other two witnesses admitted that the children were swearing at defendant. The children all stated that Marie merely asked defendant to be taken home and that defendant responded by slapping her. The children also testified that Marie had a bruise or red mark on the side of her face.

Defendant also testified that she had had previous difficulty with Marie on several occasions. She had signed a disciplinary statement asking that Marie be suspended from the bus for a period of time. Marie was apparently removed from the bus for a day or two but thereafter was

allowed to return. Defendant called Marie's mother several times, talked to the morning bus driver and to the principal, but Marie was apparently unresponsive. The morning bus driver also testified to Marie's general disruptive behavior. Defendant also admitted that she had originally told the police officer who investigated the incident that she did not strike Marie. The next morning she went to the police station and corrected her statement, explaining that she was afraid of Marie's mother who was very angry at the time.

The trial court concluded that the striking was sufficient to constitute criminal battery. Regarding whether it was legally justifiable, the court concluded that bus drivers are not protected by the *in loco parentis* status accorded by statute to teachers (Ill. Rev. Stat. 1979, ch. 122, par. 24—24), and thus are in the position of an ordinary citizen. The trial court made no finding in regard to which version of the facts he believed but rather concluded that under either version, defendant was not entitled to use physical discipline against Marie. Defendant was found guilty of battery and fined $25 plus costs.

### Opinion

Defendants' basic argument is that they are legally justified in exercising physical punishment under the doctrine of *in loco parentis*. In Illinois this doctrine has been incorporated as section 24—24 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—24), which provides:

> "Maintenance of discipline. Teachers and other certificated educational employees shall maintain discipline in the schools, including school grounds which are owned or leased by the board and used for school purposes and activities. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians."

Defendants argue that the protection of this provision should be extended by implication to bus drivers who are also responsible for supervision and safety of school children.

■■ In considering defendants' argument in light of the clear terms of the statute, we note that school bus drivers are neither teachers nor certificated and do not fall within the literal meaning of the statute. Furthermore, in a somewhat different context, the First District has held that lunchroom aids do not fall within the protection of this provision. (*Edmondson v. Chicago Board of Education* (1978), 62 Ill. App. 3d 211, 379 N.E.2d 27.) We accordingly are unwilling to extend section 24—24 to apply to school bus drivers.

■■ We do not, however, believe that the inapplicability of the *in loco parentis* doctrine *to school bus drivers should operate so as to make the* drivers the veritable prisoners of their charges. School bus drivers are required to transport children safely between the school and home, and it is a necessary corollary to this duty that they be accorded the concomitant authority to maintain safety on the school bus. Since it is unsafe to drive under chaotic circumstances, a driver must reasonably have the authority to require a reasonable degree of quiet, to make the children remain in their seats and to stop any fighting or unsafe and disruptive behavior. Since no other supervisory personnel are assigned to the bus, the driver must have the authority to deal with the problem so as to maintain a safe environment. While a common approach to disciplinary matters on a bus might involve filing disciplinary reports, a written report is clearly inappropriate where a student's conduct calls for an immediate response. Where students are *fighting, throwing objects, hanging out the windows, or attempting to* leave the bus, the subsequent filing of a report will not rectify the situation at hand. Since drivers are under a present obligation to maintain safety in the bus, they must have the authority to fulfill this obligation. A driver cannot reasonably be construed to be in the position of a private citizen; if a private citizen were confronted with a school bus full of shouting and cursing children, he could simply leave. The school bus driver does not have this option. Furthermore, since it is usually impractical or impossible for school bus drivers to eject disruptive students, physical punishment may be the only option to protect the safety of the other students and the bus. As a result, we believe that bus drivers must be accorded a limited privilege to impose reasonable discipline sufficient to fulfill their duty to maintain safety on the school bus.

■■ The next question is whether the drivers in the instant cases acted within the bounds of this privilege; that is, whether the discipline imposed was reasonable under the circumstances. In Farringer the trial court never reached this question, since it concluded that a bus driver is merely an ordinary citizen and not protected by even a limited privilege. We accordingly reverse defendant Farringer's conviction and remand the case for a new trial applying the proper test.

■■ In Davis, the trial court assumed that bus drivers were entitled to impose reasonable discipline on the students in their care. With respect to four of the students, the court concluded that the discipline was appropriate. However, with respect to the fifth child, the court found the discipline unwarranted. Since it is primarily a factual question, and because we do not believe the decision of the trial court to be against the manifest weight of the evidence, the decision of the trial court should not be overturned. The court found that Lynette was merely sitting sideways in her seat with a slight smile and was talking quietly. Implicitly, the court

determined that under these circumstances, a hard slap in the face was disproportionate to the "offense," if any, and was therefore beyond the bounds of the limited privilege. We accordingly affirm the conviction of defendant Davis.

Defendants made additional arguments regarding the establishment of a basis for a privilege on other justifications for disciplining the students. In light of the establishment of the rule which we have made today, we need not discuss these other arguments.

The conviction of defendant Davis in No. 79-537 is affirmed; the conviction of defendant Farringer in No. 79-538 is reversed and her case is remanded for a new trial applying the proper test as above set forth.

UNVERZAGT and VAN DEUSEN, JJ., concur.