CHRISTOPHER LOCKETT, A Minor, by Barbara Lockett, his Mother and Next Friend, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. BOARD OF EDUCATION FOR SCHOOL DISTRICT NO. 189, Defendant-Appellee (Vandalia Bus Lines, Inc., Defendant-Appellee and Cross-Appellant; Clyde C. Jordan *et al.*, Defendants).

Fifth District No. 5—88—0461

Opinion filed May 11, 1990.

---

[2]See Wallace Stevens, *The Emperor of Ice Cream*, The New Oxford Book of American Verse 446 (R. Ellman ed. 1976).

G. Richard Jones, of Carr, Korein, Schlichter, Tillery, Kunin & Montroy, of East St. Louis, for appellants.

David B. Stutsman and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellee Vandalia Bus Lines, Inc.

Philip R. Rice, of Rice Law Offices, of Belleville, for appellee Board of Education for School District No. 189.

JUSTICE CHAPMAN delivered the opinion of the court:

Christopher Lockett was a fourth-grade student at A.M. Jackson School in the East St. Louis School District (School District) on April 13, 1981. After school that day he boarded the school bus and sat at the rear of the bus. On the route home, the bus stopped to unload passengers. Christopher stood up, looked out the open window, and saw a boy outside bend down and pick up an object. Christopher turned his head away for a moment and when he looked back, a piece of glass struck him in the left eye. The injury resulted in complete and permanent loss of vision and light perception to the eye.

A complaint was filed on behalf of Christopher Lockett (Lockett) and his mother against the School District and the Vandalia Bus Lines (Bus Lines). The jury returned a verdict of $110,000, and reduced the verdict by $44,000, after finding Lockett 40% at fault. Judgment was entered on the verdict and plaintiffs' post-trial motion was denied. Vandalia Bus Lines' motion for judgment notwithstanding the verdict was denied as well. Plaintiffs appealed, and the Bus Lines cross-appealed.

Of the numerous issues presented to this court, the first concerns the jury's verdict. The jury verdict form in part reads, "We, the jury, find for the plaintiffs and against the following defendant(s): Vandalia Bus Lines, Inc." The last line of the verdict form states, "We further find against this plaintiff and for the following defendant(s): None." Plaintiffs insist that the verdict is inconsistent and, therefore, cannot stand. Plaintiffs cite *Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311, 472 N.E.2d 411, and *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 495 N.E.2d 141, as authority that an inconsistent verdict requires a new trial. In *Wottowa* the court held that when the jury found that defendants' guaranty was a corporate obligation it was legally inconsistent for the jury to also render a verdict finding that defendants had perpetrated a fraud by executing the guaranty without any intention of personally guaranteeing the obligations of the corporation. The *Hinnen* court ordered a new trial where the in-

consistent verdicts awarded the accident victim compensation for the full amount of her expenses for pain medication and physical therapy, but awarded nothing for pain and suffering. The jury verdict at bar does not show that the jury disregarded a proven element of damages in rendering its verdict, as did the jury in *Hinnen*. The jury verdict is also not legally inconsistent as was that in *Wottowa*. Further, any inconsistency in the written jury verdict was corrected by the trial court's action.

 After the verdict form was received by the court, the court made the following inquiry of the jurors in open court with counsel present:

> "THE COURT: But, I had one question in regard to the verdict and I would like to ask one question to the foreman.
>
> JURY FOREMAN: Yes, sir.
>
> THE COURT: At the bottom of the verdict, it says: We further find against this plaintiff and for the following defendant or defendants, and you put down the word "None." Now, after examining, from examining this verdict, you find, and the verdict of all of you is against Vandalia Bus Lines and not against School District 189?
>
> JURY FOREMAN: That is correct.
>
> THE COURT: Is that correct? Does everybody agree with that?
>
> (Whereupon, all the jurors answered in the affirmative.)"

Upon receiving a verdict in irregular form, it is proper for the court to consider the entire record, and to endeavor to determine the intent of the jury. There must be a reasonable basis upon which to find what it did intend. (*Bencie v. Williams* (1949), 337 Ill. App. 414, 420, 86 N.E.2d 258, 260.) At trial, plaintiffs proceeded against two defendants and the jury found in favor of the plaintiffs against only one of the defendants. The court inquired of the jurors as to whether the verdict was against the Bus Lines and not against the School District, and the jury affirmed the court's inquiry. It is clear that the jury intended to assess liability only as to the Bus Lines. The court's inquiry clarified the jury's verdict, and the court properly saw no reason to physically amend the verdict form.

The next issue raised by plaintiffs is whether the court erred in entering a directed verdict for the Bus Lines as to paragraph 8(a) of counts III and IV of plaintiffs' complaint. Paragraph 8(a) stated that the Bus Lines was negligent in that it:

> "a. Failed to instruct the students, including plaintiff, in safe bus riding practices in violation of State Board of Education

Rules & Regulations for Pupil Transportation Section 9.01, *et seq.*"

Section 9.01 *et seq.* reiterates the requirement imposed in section 27—26 of the Illinois School Code (Ill. Rev. Stat. 1987, ch. 122, par. 27—26), on which plaintiffs' paragraph 8(a) was based:

"§27—26. Bus safety. The curriculum in all public schools and in all other educational institutions in this State supported or maintained, in whole or in part, by public funds, which provide instruction in any of the grades from kindergarten through 12, shall include instruction in safe bus riding practices for all students who are transported by bus to or from school or in connection with any school activity. Such instruction shall be given at least twice during each school year and shall include emergency evacuation drills."

Plaintiffs insist that the Bus Lines was negligent in not fulfilling this statutorily imposed requirement because the Bus Lines was contractually obligated to fulfill it. Said contractual obligation is said to arise from the contract entered into between the Bus Lines and the School District. Plaintiffs refer to paragraph 10 of that contract:

"10. During the entire term of the proposed contract, the party of the second part [Bus Lines] shall comply in every respect with all laws, rules and regulations of the State of Illinois affecting or regulating the transportation of school children, including but not limited to the Motor Vehicle Code and *The School Code of Illinois* and the rules promulgated by the Illinois Office of Education and Department of Transportation." (Emphasis added.)

In construing a contract, the determinative factor is to effect the intent of the parties, and where the terms of the contract are plain and unambiguous, the intent of the parties must be ascertained solely from the words employed in the contract. (*Puckett v. Oelze* (1985), 134 Ill. App. 3d 1020, 1025, 481 N.E.2d 867, 871; *Hammel v. Ruby* (1985), 139 Ill. App. 3d 241, 247, 487 N.E.2d 409, 413.) In the case at bar, the language of the contract is plain and unambiguous. Paragraph 10 provides that the Bus Lines shall comply with all laws, rules and regulations; however, paragraph 10 does not obligate the Bus Lines to fulfill all the statutorily mandated obligations imposed on the School District in terms of its curriculum. The parties do not dispute that section 27—26 imposes a statutory obligation on the School District. While the Bus Lines was obligated to comply with safety laws, rules and regulations, its obligation did not extend to teaching the students as to safe bus-riding practices. It has been held

that *in loco parentis* protection for discipline afforded teachers does not apply to school bus drivers. (*People v. Davis* (1980), 88 Ill. App. 3d 728, 731, 410 N.E.2d 673, 676.) Similarly, we are not prepared to place a construction on paragraph 10, as plaintiffs suggest, which would impose the obligations of section 27—26 on the Bus Lines.

Apart from plaintiffs' argument that the Bus Lines had a contractual duty to instruct the children in safe bus-riding practices, plaintiffs insist that the court improperly directed a verdict as to paragraph 8(a) of its complaint because the Bus Lines has a common-law duty to use the highest degree of care in the transportation of children. Paragraph 8(a), however, does not allege any common-law claim. It is phrased strictly as a violation of statutory or regulatory duty. However, the plaintiffs' arguments on this common-law theory will be considered in the discussion of the striking of paragraph 8(c) of counts III and IV. That paragraph alleged the Bus Lines was negligent in that it:

> "Failed to adequately and properly supervise the students on the bus so as to keep them reasonably safe from injury, although it knew or in the exercise of its duty of care should have known of the danger of injury to the students, including plaintiff, who were passengers on said bus."

Plaintiffs contend that there was an obvious duty upon the bus driver to properly supervise the children, since a carrier of school children must exercise the highest degree of care. (*Van Cleave v. Illini Coach Co.* (1951), 344 Ill. App. 127, 129, 100 N.E.2d 398, 399.) Plaintiffs contend that had the defendant not negligently failed to supervise the children, Christopher Lockett would not have been injured.

■ School bus drivers are required to transport children safely between the school and home, and it is a necessary corollary to this duty that they be accorded the concomitant authority to maintain safety on the school bus. (*People v. Davis* (1980), 88 Ill. App. 3d 728, 732, 410 N.E.2d 673, 676.) The degree of care imposed on school bus drivers, and their authority to maintain safety on the bus, however, is for obvious reasons to be consistent with the practical operation of the bus. (*Kerby v. Chicago Motor Coach Co.* (1960), 28 Ill. App. 2d 259, 263, 171 N.E.2d 412, 415.) Although no other supervisory personnel are assigned to the bus, the driver's authority to maintain a safe environment does not extend to the degree of supervision plaintiffs would have us impose.

Geraldine McCall, the driver of the bus upon which Lockett was injured, testified at trial that just prior to the incident on the bus she had stopped to allow children off the bus. When asked by counsel

whether at that time her attention was directed towards the street and any pedestrians or cars that might be coming along, she answered affirmatively. McCall testified that she never pulls away before the street is clear of those children crossing in front of the bus. She testified that in performing her job as a bus driver she "constantly checking [sic] through the rear view mirrors to see who was up or who was doing what." She testified that on that day Lockett had to have stood up and opened the window while she was letting children off the bus, since she told the children to keep the windows closed, and since there is a rule that the children on the bus must be seated before the bus starts moving.

■ Under the circumstances of this case we do not feel that the bus driver was negligent in supervising the children and, therefore, the court did not err in directing a verdict for the Bus Lines as to paragraph 8(c) of counts III and IV of plaintiffs' complaint.

We also note that the plaintiffs recovered a verdict against the Bus Lines even though the court directed a verdict on the above two allegations. The plaintiffs concede this, but contend that if the jury had been allowed to deliberate on either one or both of the stricken allegations, the degree of fault attributed to the plaintiffs would have been less. The plaintiffs cite no authority for this proposition, and under the facts of this case and based on our findings above, we find that no error was committed.

Before addressing the remaining issues raised by plaintiffs, we turn to the cross-appeal of the Bus Lines. The Bus Lines contests the verdict on grounds that: (1) the evidence was insufficient to establish foreseeability of the danger which befell Christopher Lockett; (2) the plaintiffs failed to sustain their burden of proof that defendant's negligence was the proximate cause of Lockett's injury; and (3) the stop-line regulation was not intended to prevent objects from being thrown through the windows.

■ Under Illinois law, liability for injury to a passenger resulting from a missile hurled into the common carrier's vehicle by a third person exists only where the incident could have been reasonably foreseen and avoided by the carrier. (*Sue v. Chicago Transit Authority* (7th Cir. 1960), 279 F.2d 416.) In the case at bar the testimony revealed that no one had ever been injured by an object thrown at one of the Bus Lines' buses. At trial Antoine Robey was called as a witness. Antoine was riding the bus the day plaintiff was injured and was an eyewitness to the occurrence. He testified that every day kids threw rocks at the buses, that "there [sic] is just constantly throwing rocks." He testified, however, that he never reported this incident to

a teacher or other school official. Christopher Lockett testified that during the fourth grade things would be thrown at the bus. He estimated that this happened "maybe twice out of a week." Lockett testified that he never saw anyone throw anything through a window of a school bus he was riding prior to the day he was injured.

Leon Streif, president of the Bus Lines, was called to testify. He stated that he had been president of the corporation since 1975, and during those years he "never had anybody hurt on a bus with a projectile or rock *** coming into a window." Geraldine McCall, the driver of the bus upon which Lockett was injured, testified that she started working for the Bus Lines in 1980. Although she constantly warned the children about keeping the windows closed, she never had trouble before the incident at bar with people throwing things inside the bus.

Although it is clear that no one recalled anyone ever being injured by an object thrown into the bus, Robey and Lockett testified that third parties did throw objects at the bus. The bus driver testified that the day Lockett was injured was the first time any objects had been thrown at her bus, yet she knew that objects could be thrown at the bus and was aware that they could come through the open window. The Bus Lines cites *Schwartz v. Chicago Rys. Co.* (1917), 208 Ill. App. 232, in support of its argument that the evidence in this case was insufficient to establish foreseeability. In *Schwartz*, a street car passenger was injured by a stone thrown through the car window by a third person. Evidence was introduced showing that stones had been thrown through the windows of the car previously, yet no one had ever been injured in those incidents. The court held the evidence was totally insufficient to show the existence of an actual menace to the safety of appellee's passengers, of which it had notice.

■■ ■ In our opinion this case is distinguishable from *Schwartz*. In *Schwartz* the court found that the evidence of prior rock throwing was not sufficient to establish foreseeability. In the case at bar, coupled with the evidence that rocks had previously been thrown at the bus, there was evidence that at the time of the occurrence children both on and off the bus were hollering at one another, and that children on the bus were standing up with the windows open. These additional factors increased the likelihood of danger. The Bus Lines makes much of the driver's testimony that just prior to the incident, when she was stopped to release passengers, she was not aware of the children hollering or of any windows being open. We do not find her statement controlling since the function of the jury is to weigh contradictory evidence and inferences, to judge the credibility of the wit-

nesses, and to draw ultimate conclusions of fact. The fact that different conclusions or inferences could have been drawn by the jury does not enable the court to set aside the verdict. (See *Lode v. Mercanio* (1979), 77 Ill. App. 3d 150, 156-57, 395 N.E.2d 1014, 1018.) We find there was sufficient evidence to support the conclusion that the Bus Lines should have anticipated the potential harm.

The Bus Lines also contends that evidence was insufficient to show foreseeability since plaintiffs failed to present evidence specifying where the prior object-throwing incidents occurred. Defendant relies on *Sue v. Chicago Transit Authority* (7th Cir. 1960), 279 F.2d 416, as authority that prior-occurrence evidence must be such as would establish that the carrier had notice of danger to its passengers at the place of the accident. We do not find the evidence establishing the place of occurrence of the prior object-throwing incidences in the instant case to be so remote in time and place as those in *Sue*. In *Sue v. Chicago Transit Authority*, the defendant busline operated as a common carrier in a city of nearly four million people and over many miles of routes utilizing surface, subway and elevated facilities. Unlike the case at bar, foreseeability in *Sue* would quite obviously depend on large part in what location the alleged prior incidents occurred. In the instant case Robey and Lockett testified as to objects being thrown at the bus during the school term wherein plaintiff was injured, and on that particular bus route. We are not unmindful of the bus driver's testimony that she had no notice of any prior incidents where objects were thrown at the bus, but it is the function of the jury to weigh contradictory evidence and to judge the credibility of the witnesses. (*Lode*, 77 Ill. App. 3d at 156-57, 395 N.E.2d at 1018.) We find that under the evidence presented, the Bus Lines could reasonably foresee that an object could be thrown at the particular location and time involved herein.

The Bus Lines also claims that plaintiffs failed to sustain their burden of proof that any act or omission by the driver was a proximate cause of the injury. Defendant reasons that the evidence did not show that had the window been closed at the stop line, Lockett would not have been injured. Defendant cites in particular the testimony of plaintiff's mother, who stated that her son was 4 feet ½ inch tall at the time of the incident. Testimony at trial revealed that the distance from the floor of the bus to the window when opened all the way was 4 feet ½ inch. Defendant reasons that the bus driver's testimony that broken glass was found in the trench above the window establishes that the trajectory of the thrown glass was through the upper portion of the window which would have been open even if the stop-line regu-

lation was complied with. This, argues defendant, conclusively establishes that Lockett would not have been protected by the window whether it was closed to the stop line or fully opened. Furthermore, there was no evidence that even if the object were thrown below the stop line, a similar injury due to splintered glass from the window would not have been sustained. Finally, defendant insists that the open window was a condition, and not the cause of the object entering the bus, and therefore, the Bus Lines is not liable.

■■■ ■ Proximate cause is a term of art encompassing the distinct concepts of cause in fact and legal cause; once it is established from an analysis of the facts that defendant's conduct was a cause in fact of plaintiff's injury, the next question is whether the defendant should be legally responsible for what he caused. (*Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 333, 369 N.E.2d 1284, 1292, *aff'd in part & rev'd in part* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) Using the "but for" test of cause in fact, the plaintiff need only show that but for the defendant's conduct, the injury would not have occurred. (*Kerns*, 54 Ill. App. 3d at 333, 369 N.E.2d at 1292.) Here the plaintiffs alleged that but for the negligence of the Bus Lines in not closing the window in accordance with the stop-line regulation, the object that was thrown would not have entered the bus injuring Lockett's eye. We believe that a jury could reasonably find that the "but for" test is satisfied, in that it is more probable than not that had the window been closed to the stop line, the object would not have entered the bus and would not have shattered the window itself.

The second inquiry of the proximate cause analysis is whether the Bus Lines should be held legally responsible for the injury. In particular we need to ask whether an intervening cause of the injury—the third person throwing the object—should absolve the Bus Lines of liability. A defendant is legally responsible for all of the natural and probable results of his actions; for all the results which an ordinarily prudent person ought to have foreseen as likely to occur. (*Kerns*, 54 Ill. App. 3d at 334, 369 N.E.2d at 1292.) It is not necessary that defendant foresee with precision the injury which resulted from his act, or the concurrent cause of plaintiff's injury. (*Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 102, 311 N.E.2d 128, 133.) A determination of whether a defendant's acts were the proximate cause of plaintiff's injuries is a question for the trier of fact. (*Tressler v. Winfield Village Cooperative, Inc.* (1985), 134 Ill. App. 3d 578, 579, 481 N.E.2d 75, 76.) We hold that the evidence was sufficient for the jury to find that plaintiff's injury was a natural and probable result of the window being open past the stop line.

264

■■ The final issue raised in the Bus Lines' cross-appeal concerns the duty imposed on the Bus Lines with regard to the stop-line regulation. The violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417, 170 N.E.2d 881, 886.) Yet not every violation of a statute or ordinance is evidence of negligence. The statute or ordinance may not prescribe duties for the protection of persons or property or the harm suffered may not be the kind which the statute or ordinance was intended to prevent. *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74.

The State Board of Education rules and regulations for pupil transportation, section 11.4, provides that "windows shall not be lowered below the stop line painted on the body pillar." The School Board's written rules and regulations do not provide a specified reason for the stop-line regulation. In an attempt to show what type of harm the regulation was intended to prevent, the Bus Lines cites section 4.2.42 of the Illinois Minimum Safety Standards for Construction of Type 1 School Buses, which deals with the minimum amount of space side window openings must provide, and the point at which a stop line must be affixed to the stationary structure between each window. Its stated purpose is to allow for emergency egress. Mr. Paul Stewart, State Director of School Transportation for West Virginia, and Director of School Transportation Safety Programs for the National Safety Council from 1966 to 1973, testified that his job with the safety council was to promulgate rules and regulations to promote safety in school transportation. He testified that the windows were made to lower halfway to provide an emergency exit through the windows, yet to prevent children from "hanging" out of them.

Lee Ray King, the administrative assistant for elementary education in the East St. Louis School District No. 189, testified that the children are instructed not to open the windows on the bus unless they receive the driver's permission. Lee King testified that the reason for this rule was for the safety of the children, so that they would not put their heads or limbs out the windows or throw things out the windows.

The bus driver, Geraldine McCall, testified affirmatively when asked by counsel whether the reason she wanted the bus windows closed at all times was to protect the children from hanging out of them and to guard against things coming in through the open windows. She testified that although nothing had ever been thrown at her bus before, she was concerned that it could happen.

■■ Despite the evidence tending to show that the main purpose

of the stop-line rule was to prevent children from hanging out the windows, the regulation itself is in general terms and does not express a purpose for its enactment. Given the testimony of the administrative assistant for elementary education and the bus driver, coupled with the general terms of the regulation, we cannot find that the regulation was not intended to prevent the harm which befell the plaintiff in this case. See *Dini*, 20 Ill. 2d 406, 170 N.E.2d 881; See also *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74.

We now turn to the remaining issues plaintiffs raise on appeal. Plaintiffs contend that the trial court erred in allowing the Bus Lines' witness to testify regarding the stop-line regulation, while not allowing plaintiffs' witness to testify regarding the same.

The Bus Lines' witness, Mr. Paul Stewart, opined that the purpose of the stop-line regulation was to prevent children from putting their heads and limbs out the window. Plaintiffs called the vice-president of the Bus Lines, Dennis Streif, as a witness. When counsel asked Streif whether a purpose of the stop-line regulation was to prevent objects from being projected through open windows, the court sustained defense counsel's objection. Plaintiffs maintain that had Dennis Streif been permitted to answer the question, he would have confirmed that the stop-line regulation did indeed serve a dual purpose: to prevent children from hanging out the windows, and to prevent objects from being thrown into the bus. Plaintiffs reason that the court's alleged error in allowing Paul Stewart to give his opinion, and in excluding Dennis Streif's opinion, had the effect of striking paragraph 8(b) of their complaint regarding the duty imposed by the stop-line regulation. Since the jury only had the allegations of negligence of paragraph 8(d) of plaintiffs' complaint to compare with Lockett's alleged fault, plaintiffs argue that the jury assessed a greater portion of the fault to Lockett than it would have otherwise.

Paul Stewart testified that for 11 years, up until his retirement in November of 1987, he was the State director of school transportation for West Virginia. He was Director of School Transportation Safety Programs for the National Safety Council from 1966 to 1973. His employment in both positions required him to promulgate rules and regulations to promote safety in school transportation. From 1953 to 1966 he also served as a director of school transportation for a county in Morgantown, West Virginia. That job encompassed the "total school transportation program, including safety, for the county."

Plaintiffs contend that the court erred in allowing the opinion testimony of Paul Stewart on the ground that he was not qualified to render an expert opinion on the purpose of the Illinois

stop-line regulation. An expert is a person possessing special skill or knowledge beyond that of the average layperson. The determination of an expert's qualification rests in the sound discretion of the trial court and will not be overturned on review absent an abuse of discretion. (*Byrne v. SCM Corp.* (1989), 182 Ill. App. 3d 523, 548, 538 N.E.2d 796, 812.) Here, the witness certainly has more specialized knowledge concerning school transportation safety than the average person in the community. Accordingly, the court's allowing Stewart to testify did not amount to an abuse of discretion.

We do not find that the witness' alleged ignorance as to the Illinois stop-line regulation was sufficient to show that the trial court abused its discretion in permitting Stewart's testimony. Plaintiffs were free to discredit Stewart's testimony on cross-examination, and if successful, such would be reflected in the jury verdict. *Byrne*, 182 Ill. App. 3d at 548, 538 N.E.2d at 812; *Theodosis v. Keeshin Motor Express Co.* (1950), 341 Ill. App. 8, 92 N.E.2d 794.

Plaintiffs' charge that the trial court erred in disallowing plaintiffs' counsel from eliciting an opinion of the stop-line regulation's purpose from their witness, Dennis Streif, is also without merit. Dennis Streif testified that he began working for Vandalia Bus Lines in 1977, doing mechanical work. He did that for about three years. For several years after that he held the job of ordering parts for the buses. He testified that he has held his current job as vice-president, overseeing the school bus operation, for three or four years.

The test of the competency of a witness to testify as an expert is whether that witness possesses sufficient knowledge of the subject matter. (*In re Custody of Baty* (1980), 83 Ill. App. 3d 113, 115, 403 N.E.2d 747, 749.) We do not find that the trial court abused its discretion in disallowing the witness to give an opinion on the purpose for the stop-line regulation. Streif's qualifications did not enable him to form an opinion as to the purpose of the enactment of the stop-line regulation. It was never shown that he possessed sufficient knowledge of the subject matter of school transportation regulations to qualify as an expert, nor was it established that he had sufficient knowledge to formulate an expert opinion. See *Baty*, 83 Ill. App. 3d at 116, 403 N.E.2d at 749; *Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 146, 437 N.E.2d 376, 382.

Plaintiffs' next two issues on appeal concern jury instructions. The court gave plaintiffs' tendered instruction No. 17, which read:

"It was the duty of the defendant Vandalia Bus Lines, Inc. to exercise the highest degree of care consistent with the type of vehicle used and the practical operation of its business of trans-

porting students by school bus to protect its passengers from the danger of injury from objects being thrown at the bus of which it knew or should have anticipated from facts and circumstances known to it while the passengers were on its school bus or while boarding or alighting therefrom."

Plaintiffs contend that "highest degree of care" is a technical legal term, requiring definition. They argue that the trial court erred in refusing to give plaintiffs' tendered instruction defining "highest degree of care":

"When I use the words 'highest degree of care,' I mean that defendant Vandalia Bus Lines, Inc. is required to do all that human care, vigilance and foresight can reasonably do to carry a passenger safely, consistent with the mode of conveyance adopted and the practical operation of its business."

■■ Words used in their conventional sense need not be defined or explained in giving instructions to the jury. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 323, 211 N.E.2d 247, 252.) Trial courts should only define or explain technical terms or arcane legal words and phrases that appear in jury instructions. (*Houck v. Martin* (1980), 82 Ill. App. 3d 205, 213, 402 N.E.2d 421, 428.) The term "highest degree of care" as used in the instruction given to the jury is not so technical or arcane as to require explanation. Any attempt to further define or explain the term would have quite possibly led to confusion and error. Accordingly, it is our opinion that the court did not err in refusing plaintiffs' tendered instruction.

Plaintiffs also charge that the trial court erred in refusing to give a tendered instruction, Illinois Pattern Jury Instructions, Civil, No. 5.01 (1968), which would have permitted the jury to draw adverse inferences as to the Bus Lines because of the Bus Lines' alleged failure to produce an accident report prepared by the bus driver.

During a conference outside of the jurors' presence, counsel for the Bus Lines represented that Dennis Streif searched the Bus Lines' records and found a statement written in longhand that the bus driver had prepared regarding the accident. Defendant's counsel stated that upon receipt of the report, a copy of the same was sent to plaintiffs' counsel. Counsel for the plaintiffs did not deny this and acknowledged that the handwritten report present at this conference was the report allegedly submitted to the Bus Lines by the bus driver.

At trial the bus driver, Geraldine McCall, testified that on the day of the accident she completed an accident report for the School District. She couldn't recall whether she prepared a report for the Bus Lines, but she testified, "I am pretty sure I did because that was a

rule." When presented with plaintiffs' exhibit No. 31 at trial, McCall identified it as a handwritten report she prepared the day Lockett was injured. She did not know whether the report was the one she prepared for the School District or the Bus Lines.

■■■ Thus, the trial court was presented with testimony that the bus driver was "pretty sure" she had filled out a report, but that she did not know whether the report she filled out was the one prepared for the School District or the Bus Lines. Under these facts, the trial court did not abuse its discretion in refusing to give IPI Civil No. 5.01.

Plaintiffs finally contend that the court committed reversible error in refusing to permit plaintiffs to inquire of Lee Ray King whether King was the person designated by the School District to ensure compliance with all regulations and rules affecting safe pupil transportation. The School District's objection to the witness responding to such inquiry was sustained, the judge stating, "I will sustain the objection in regard to all the rules."

■■■ Contrary to plaintiffs' assertion that after the court's objection they were denied the opportunity to develop this line of questioning, plaintiffs continued their examination of the witness, asking, "[D]oes the school district have anybody that makes sure that all the rules and regulations for pupil transportation are followed?" The witness was permitted to answer the question. During re-cross-examination plaintiffs' counsel inquired of the witness, "[W]hen the children are riding on the bus, why making sure that they are safe and all the rules are followed, you leave that up to the bus driver; correct?" The trial court permitted King to answer that question over defendant's objection.

The scope of cross-examination is largely within the discretion of the trial judge. (*Eckley v. St. Therese Hospital* (1978), 62 Ill. App. 3d 299, 313, 379 N.E.2d 306, 316.) It appears here that the trial judge sustained the objection to the inquiry as to all the rules and regulations in order to avoid misleading the jury. We do not find that the trial judge abused his discretion in this case.

For the foregoing reasons, we conclude that the judgment of the trial court should be affirmed.

Affirmed.

RARICK and HOWERTON, JJ., concur.